681 F.2d 161
 216 U.S.P.Q. 108
 James WILLIAMS, individually and d/b/a GMP Company
v.
CURTISS-WRIGHT CORPORATION, James Williams, individually and
d/b/a GMP Company and Turbine Alloy Company, Appellants.
 No. 81-2881.
 United States Court of Appeals,
Third Circuit.
 Argued April 12, 1982.
Decided May 19, 1982.
 
 John G. Gilfillan, III, Newark, N. J., James W. Broscious (argued), Schumann, Seybolt & Broscious, Washington, N. J., for appellants; Weil, Gotshal & Manges, Robert F. Brodegaard (argued), Helene D. Jaffe, R. Peyton Gibson, M. Diane Jasinski, New York City, of counsel.
 Zazzali & Kroll, Francis J. Vernoia, Newark, N. J., of counsel, for appellee.
 Before SEITZ, Chief Judge, ADAMS, Circuit Judge and STAPLETON, District Judge.*
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 On this interlocutory appeal we review an order of the district court preliminarily enjoining the appellant, James Williams, from using trade secrets of the appellee, Curtiss-Wright Corporation. In addition, we are asked to review an order of the district court compelling Williams to produce certain documents.[1] We affirm the order granting the preliminary injunction and dismiss for lack of appellate jurisdiction the portion of the appeal dealing with the order regarding the production of documents.
 
 
 2
 * Curtiss-Wright designed, manufactures, and sells the J-65 jet engine, and also produces and sells replacement parts and accessories for that engine. It possesses drawings and written specifications for many of those parts and accessories. Williams obtained copies of the specifications, and then entered into competition with Curtiss-Wright for the manufacture and sale of the parts and accessories. Williams identifies two sources from which he obtained the information:
 
 
 3
 (1) purportedly unsolicited and accidental disclosure to Williams by several of Curtiss-Wright's suppliers and vendors who acted in violation of confidentiality agreements with Curtiss-Wright; and
 
 
 4
 (2) apparently erroneous release by the Department of the Navy, a Curtiss-Wright customer, following Freedom of Information Act (FOIA) requests filed by Williams.
 
 
 5
 Curtiss-Wright contends that the specifications constituted trade secrets under applicable New Jersey law, and that their use by Williams was unlawful.
 
 
 6
 Williams sued Curtiss-Wright in 1979, pursuant to 15 U.S.C. §§ 1-7, seeking damages for unlawful restraint of trade and an injunction against further activities by Curtiss-Wright that were designed to remove Williams as a competitor. Curtiss-Wright counterclaimed on theories of unfair competition and theft of trade secrets. On March 17, 1980, Curtiss-Wright moved for a temporary restraining order barring the circulation by Williams of drawings alleged to be proprietary drawings of Curtiss-Wright. The court concluded that more information was needed before it could rule upon the motion. Accordingly, the district judge ordered Williams to be present in court the next day and produce all Curtiss-Wright drawings or copies thereof in his possession that related to the J-65 engine or its parts. Williams appeared the following day and produced approximately 85 drawings and prints of over 50 parts of the J-65 engine, as well as various "aperture cards"-computer cards with a microfilm picture of a drawing affixed. The court took possession of the documents and placed them under seal. The parties thereupon agreed to proceed by depositions and written reports of experts.
 
 
 7
 Following lengthy settlement negotiations that ultimately proved fruitless, and after the introduction into evidence of certain depositions and reports, the district judge instructed Williams' attorney to advise the court "whether (he had) any dispute over the fact items that are relied upon (by Curtiss-Wright)." Transcript of Proceedings, April 8, 1981, at 51. In response, Williams submitted two additional affidavits but no statement of disputed facts. The court did not conduct a hearing on the merits of the dispute. On July 24, 1981, in a memorandum opinion, the court ruled (a) that Curtiss-Wright would suffer irreparable harm in the absence of an injunction, (b) that Williams would not suffer such harm if the injunction were to issue, and (c) that Curtiss-Wright would very likely succeed on the merits. Accordingly, on September 14, 1981, the court directed Williams to cease and desist from disseminating or using Curtiss-Wright's trade secrets, permitting Williams to manufacture for sale only those parts that could be produced without resort to the trade secret data and could be clearly identified as Williams' product.
 
 
 8
 Pursuant to 28 U.S.C. § 1292(a)(1), Williams appeals from the grant of the preliminary injunction. He also objects to the district court's order of March 17, 1980, which compelled the production by Williams of Curtiss-Wright documents and specifications that were in his possession.
 
 II
 
 9
 The primary challenge to the district court's injunctive order is procedural. Williams contends that it was improper for the district court to render such an order without granting the parties an opportunity for a hearing on the merits of the preliminary injunction.
 
 
 10
 We agree that a hearing might well have been salutary or at least expedient, given that the district court's order went to the very core of the dispute and, indeed, may have in effect resolved it. It is a quite different proposition, however, to insist that the district court's decision not to hold a hearing constituted either an abuse of discretion or an error of law. It has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue. See e.g., Drywall Tapers, Local 1974 v. Operative Plasterers, 537 F.2d 669 (2d Cir. 1976); International Electronics Corp. v. Cline, 330 F.2d 480 (3d Cir. 1964); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2949 (1973 & Supp.1982). The chief question on this appeal, then, is whether, in ordering the preliminary injunction, the district court relied upon any facts that were properly disputed. We conclude that the court relied on no such disputed facts.
 
 
 11
 Williams alleges as a challenged fact the question whether the Curtiss-Wright drawings and specifications could have been "reverse engineered"-that is, whether it would be possible, by examining the products that Curtiss-Wright has released on the market, independently to deduce the specifications and other information contained in the Curtiss-Wright drawings. It is argued that if, in fact, the drawings could be reverse engineered, the Curtiss-Wright drawings would not constitute trade secrets. See, e.g., Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 476, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974); Adolphe Gottscho, Inc. v. Bell-Mark Corp., 79 N.J.Super. 156, 159-60, 191 A.2d 67, 69 (Ch.Div.1963). We conclude after reviewing the affidavits and other testimony in the record, however, that uncontroverted evidence appears to establish that the drawings cannot be reverse engineered. Such evidence serves as an adequate basis for the district court's finding that Curtiss-Wright is likely to prevail on this point.[2]
 
 
 12
 It was not questioned before the district court that the drawings possessed and used by Williams at the time this suit was instituted were copies of Curtiss-Wright documents, and not themselves the products of reverse engineering by Williams. This does not, however, necessarily establish the impossibility of deriving the drawings through reverse engineering. In an affidavit filed on April 21, 1981, Williams contended that his company had finally succeeded in measuring the Curtiss-Wright products with precision sufficient to permit the manufacture of those products, although not with precision sufficient to reproduce the specifications in the Curtiss-Wright documents themselves. On May 7, 1981, James King, an expert witness for Curtiss-Wright, submitted an affidavit stating, in part, that measurement of Curtiss-Wright parts with the specificity claimed by Williams could not serve as a means to manufacture J-65 replacement parts. He averred that, because any manufactured part is subject to variation from item to item,
 
 
 13
 it is essential that the permissible tolerances be ascertained so that a manufacturer knows the range within which certain part dimensions can vary and yet still fit properly within the J-65 engine. Measuring a number of Curtiss-Wright parts would not enable even the most skilled engineer or draftsman to ascertain the permissible range of tolerance for various critical dimensions which are contained on Curtiss-Wright's drawings.
 
 
 14
 Joint Appendix at 180. This expert testimony-that specifications for the J-65 parts cannot be reverse engineered, and in particular the statement that the asserted precision of Williams' measurements of the Curtiss-Wright parts is insufficient, without knowledge of the permissible range of tolerances for those parts as set forth on the drawings, to serve as a substitute for the drawings-is entitled to substantial weight. It was not put into issue by the mere unsubstantiated assertion of Williams, a non-expert, that the drawings he produced are equivalent to those belonging to Curtiss-Wright, and that Curtiss-Wright's drawings can therefore be "reverse engineered." See, e.g., Castleberry v. Collierville Medical Associates, Inc., 92 F.R.D. 492, 493-94 (W.D.Tenn.1981); Kirkland v. New York State Department of Correctional Services, 482 F.Supp. 1179, 1181-82 (S.D.N.Y.1980), aff'd 628 F.2d 796 (2d Cir. 1980), cert. denied, 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981).
 
 
 15
 The remaining fact allegedly in dispute-the means by which Williams obtained the Curtiss-Wright drawings-does not appear to have served as a predicate for the injunctive order. The record contains sufficient unchallenged evidence to support the district court's findings that Curtiss-Wright will be likely to succeed in demonstrating that Williams had reason to know, and in fact knew, that the drawings were secret when he obtained them, and that their release to him was improper. If this is so, the specific means by which Williams obtained the drawings, whether from Curtiss-Wright's suppliers or from the Department of the Navy through apparently erroneous release following a FOIA request, would not appear to affect the liability of Williams under New Jersey law. See Restatement of Torts § 757(c)-(d) (1939);[3] Sun Dial Corporation v. Rideout, 16 N.J. 252, 257, 108 A.2d 442, 445 (1954) (New Jersey substantially adopts Restatement law of trade secrets).III
 
 
 16
 Williams also objects to the district court's order of March 17, 1980, requiring the production by Williams of all Curtiss-Wright drawings or copies thereof in his possession. Ordinarily, such orders are not reviewable on an interlocutory appeal. See, e.g., Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H., 658 F.2d 944, 947 (3d Cir. 1981). If the order directing Williams to produce the documents is appealable at all, then, it can be so only if the injunctive order, appealable pursuant to 28 U.S.C. § 1292(a) (1), cannot be resolved without reference to the propriety of the production order. See Kershner v. Mazurkiewicz, 670 F.2d 440, 449 (3d Cir. 1982) (in banc) (addressing appealability of class certification decision as concomitant of preliminary injunction order); N. L. R. B. v. Interstate Dress Carriers, Inc., 610 F.2d 99, 104 (3d Cir. 1979). Williams has not established that review of the production order, issued over a year before the injunctive order, is necessary for us properly to decide the appeal from the preliminary injunction, nor do we believe that, given the nature of the dispute, the two matters are "inextricably bound," Kershner, 670 F.2d at 449. Accordingly, we are without jurisdiction to review the district court's production order at this time.
 
 IV
 
 17
 The order of the district court granting a preliminary injunction against Williams will be affirmed. Williams' challenge to the district court's production order of March 17, 1980, will be dismissed without prejudice, inasmuch as we lack appellate jurisdiction over that question at this time.
 
 
 
 *
 Hon. Walter K. Stapleton, United States District Court for the District of Delaware, sitting by designation
 
 
 [1]
 The notice of appeal specifically refers to the injunction, but makes no reference to the order dealing with the production of documents
 
 
 [2]
 Williams contends that the district court applied an incorrect legal standard in determining that Curtiss-Wright's drawings constituted trade secrets-that the court looked to whether Williams himself had been able to reverse engineer the drawings and not to whether it was possible for one to do so. This misconstrues the findings of the district court, which stated that "it does appear probable that Curtiss-Wright can prove that the parts were not 'duplicable by anyone' " and specifically noted the testimony of the expert, James King, that reverse engineering of the drawings was impossible. Mem. Op. at 7, reprinted at Joint Appendix at 181
 
 
 [3]
 Section 757 of the Restatement reads:
 One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if
 (c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or
 (d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake.