IAC, et al. v. Bell Helicopter

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-142-CV

IAC, LTD., BONDED STRUCTURES, LTD., APPELLANTS

VAN HORN AVIATION, L.L.C., AND PARTS 

MANUFACTURING ASSOCIATES

V.

BELL HELICOPTER TEXTRON, INC. APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

In this interlocutory appeal,
(footnote: 1) appellants
(footnote: 2) appeal the trial court’s order enjoining them from using trade secrets relating to Bell Helicopter Textron, Inc.’s 206B and OH-58 helicopter blades.  In eight issues, appellants contend that the trial court erred in granting the temporary injunction, excluding the testimony of an absent witness, and setting the amount of the bond, and that the temporary injunction is defective on its face.  We will affirm.

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief.  
Walling v. Metcalfe
, 863 S.W.2d 56, 58 (Tex. 1993); 
Fox v. Tropical Warehouses, Inc.
, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.).  Whether to grant or deny a request for a temporary injunction is within the trial court’s discretion, and we will not reverse its decision absent an abuse of discretion.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 204 (Tex. 2002); 
Fox, 
121 S.W.3d at 857.  Accordingly, when reviewing such a decision, we must view the evidence in the light most favorable to the trial court’s order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion.  
Fox, 
121 S.W.3d at 857; 
Univ. Health Svcs. v. Thompson
, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.).  A trial court does not abuse its discretion if it bases its decision on conflicting evidence and evidence in the record reasonably supports the trial court’s decision.  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978); 
Fox, 
121 S.W.3d at 857.  An abuse of discretion does not occur as long as there is some evidence to support the trial court’s decision.  
Int’l Fid. Ins. Co. v. Wise Co. Bail Bd.
, 83 S.W.3d 257, 260 (Tex. App.—Fort Worth 2002, no pet.). 

Appellants are trying to compete with Bell in the helicopter replacement blade market.  They have spent approximately one million dollars to design and prepare for the manufacture of a replacement blade for Bell’s 206B helicopter, which would be priced slightly lower than Bell’s blade.  In 2001, Jim Van Horn formed Van Horn Aviation, L.L.C. to develop the 206B replacement blade.  Randy Stevens, principal of IAC, Ltd., agreed to manufacture and market the replacement blade.
(footnote: 3)  At the time, IAC, Ltd. was a Customer Service Facility (“CSF”) for Bell.  As a CSF, IAC, Ltd. received proprietary data relating to the Bell 206B rotor blade.  Stevens agreed to use the data disclosed by Bell to IAC, Ltd. solely for the purpose of repairing Bell helicopters.

Van Horn planned to use public domain documents, reverse engineering, and his original design to design the replacement blade.  Knowing that Bell’s OH-58 blade was similar to its 206B blade, for which he was unable to obtain public documents, Van Horn purchased the Depot Maintenance Work Report (“DMWR”) for Bell’s OH-58 helicopter from Newport Aeronautical Sales.  Using the information in the DMWR, he then performed tests on a 206B blade to determine the degree of similarity between it and the OH-58 blade.  His tests showed that the contour and twist data for the two blades were identical.  Van Horn used the OH-58/206B contour and twist data for the replacement blade as well as some of the same sealants and adhesives that Bell uses for the 206B blade. 

When Bell learned that appellants were marketing their replacement blade, it sued them for misappropriation of trade secrets, unfair competition, theft of trade secrets, breach of contract, and breach of fiduciary duty.  On March 16, 2004, Bell applied for and received a temporary restraining order.  On May 6, 2004, after a hearing, the trial court signed an order granting Bell a temporary injunction. 

In appellants’ first, second, third, and sixth issues, they contend that the trial court abused its discretion in granting the temporary injunction because Bell failed to establish the existence of a trade secret and show irreparable harm.   To be entitled to a temporary injunction, the applicant must plead a cause of action and show a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim.  
Butnaru, 
84 S.W.3d at 204.  A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it.  
Fox, 
121 S.W.3d at 857
; Miller Paper Co. v. Roberts Paper Co.
, 901 S.W.2d 593, 597 (Tex. App.—Amarillo 1995, no writ).  An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.  
Butnaru, 
84 S.W.3d at 204; 
Fox, 
121 S.W.3d at 857.

One of the causes of action upon which Bell based its request for a temporary injunction was its trade secret misappropriation claim.  Under Texas law, trade secret misappropriation is established by showing that a trade secret existed, the trade secret was acquired through a breach of a confidential relationship or was discovered by improper means, and the defendant used the trade secret without the plaintiff’s authorization. 
 Avera v. Clark Moulding
, 791 S.W.2d 144, 145 (Tex. App.—Dallas 1990, no writ); 
Alcatel USA, Inc. v. DGI Tech.
, 166 F.3d 772, 784 (5th Cir. 1999).  In determining whether to grant a trade secret protection by a temporary injunction, a trial court does not determine whether the information sought to be protected is, in law and fact, a trade secret; rather, the trial court determines whether the applicant has established that the information is entitled to trade secret protection until the trial on the merits. 
 Mabrey v. Sandstream, Inc.
, 124 S.W.3d 302, 311 (Tex. App.—Fort Worth 2003, no pet.); 
Ctr. for Econ. Justice v. Am. Ins. Ass’n
, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.).  That an order is issued granting trade secret protection does not mean the protected information is a trade secret.  
Ctr. for Econ. Justice
, 39 S.W.3d at 343. 

A trade secret is “any formula, pattern, device or compilation of information which is used in one’s business and presents an opportunity to obtain an advantage over competitors who do not know or use it.”  
In re Bass
, 113 S.W.3d 735, 739 (Tex. 2003) (quoting 
Computer Assocs. Int’l, Inc. v. Altai, Inc.
, 918 S.W.2d 453, 455 (Tex. 1996)).  The supreme court has identified six nonexclusive criteria a court should consider in determining whether information is entitled to trade secret protection:  

(1) the extent to which the information is known outside the holder’s business; (2) the extent to which it is known by employees and others involved in the holder’s business; (3) the extent of the measures taken by the holder to guard the secrecy of the information; (4) the value of the information to the holder and its competitors; (5) the amount of effort or money expended by the holder in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  

Id.
  Information generally known and readily available is not protectable, but the fact that information is discoverable by lawful means does not deprive its owner of protection from one acquiring it by unfair means.  
In re Bass
, 113 S.W.3d at 739; 
Fox, 
121 S.W.3d at 858.

 When Bell’s evidence is viewed in light of the 
Bass
 factors, it supports the trial court’s finding that the 206B data Bell disclosed to IAC, Ltd. and the DMWR obtained by Van Horn are entitled to trade secret protection until trial on the merits in the underlying case.  

With respect to the 206B data, Bell produced evidence showing the measures it takes to guard the secrecy of the data, the amount of effort Bell expended in developing the data, the data’s value, and the difficulty with which the data could be duplicated by others.  Bell showed that it guards the secrecy of its data by storing the originals of its drawings and specifications in a vault, posting security guards at its plants, requiring persons entering the plant to identify themselves and wear identification badges, checking material going in and out of the plant, limiting access to data on its internal computer system to persons with appropriate system identification and passwords, and using confidentiality agreements with its vendors to whom it supplies proprietary data.  A Bell engineer testified that thirty to forty thousand hours were required to develop the design of the blade and another thirty to forty thousand hours were needed to develop techniques for its production.  An employee in Bell’s marketing and sales department estimated that the replacement blade market was worth approximately twelve million dollars a year.  Further testimony showed that it would not be possible to duplicate the specifications for the blade with the necessary degree of precision through reverse engineering.

With respect to the DMWR, Bell produced evidence of the measures it takes to protect the secrecy of the data contained in the DMWR and the extent to which the information is known outside of Bell’s business.  Bell showed that the DMWR was created using Bell drawings that would have been marked “confidential to Bell” and that the DMWR states on its face that it is not available through Attorney General publication centers.
(footnote: 4)  Additional evidence revealed that the drawings used to create the DMWR are not available through a Freedom of Information Act (“FOIA”) request.  Moreover, Newport Aeronautical, Van Horn’s source of the DMWR, provides the DMWR only on a “need to know basis” and does not provide electronic access to it. 

This evidence is some evidence that the 206B data and the DMWR are entitled to trade secret protection.
(footnote: 5)  Therefore, we turn to the second element of Bell’s trade secret misappropriation claim, namely, whether appellants acquired the trade secrets through a breach of a confidential relationship or discovered it by improper means. 

Several witnesses testified, and Bell’s Customer Service Facility Agreement showed, that Bell disclosed 206B data to IAC, Ltd. so that IAC, Ltd. could repair Bell’s helicopters.  Pursuant to a confidentiality agreement, however, IAC, Ltd. had an obligation to keep the Bell data confidential. Stevens, the president of IAC, Ltd., was a partner with Van Horn in appellants’ 206B replacement blade project.  IAC, Ltd. kept the 206B data from Bell in its library, and Van Horn had access to it.  The contour and twist data for the 206B blade is identical to that for the replacement blade.   Such evidence tends to support a reasonable inference that appellants acquired the 206B data through a breach of IAC, Ltd.’s confidential relationship with Bell.  Furthermore, Bell’s showing that the DMWR was not available through Attorney General publication centers, the drawings upon which the DMWR was based were not available through a FOIA request, and Newport Aeronautics provided the DMWR on a “need to know” basis is evidence that raises the possibility that the disclosure of the DMWR was improper.
(footnote: 6) 
 See Williams v. Curtiss-Wright Group Corp.
, 681 F.2d 161, 164 (3d Cir. 1981) (holding that under section 757 of the Restatement of Torts,
(footnote: 7) the apparently erroneous disclosure of jet engine specifications through a FOIA request did not affect appellant’s liability for misappropriation of those trade secrets).

Bell also supported the third element of its misappropriation of trade secrets claim by producing some evidence that appellants used the 206B data and DMWR without Bell’s authorization.  Bell showed that appellants used contour and twist data contained in both the 206B data disclosed to IAC, Ltd. and the DMWR and that they used primer and adhesive specifications present in the 206B data.  In addition, Van Horn created his certification plan to submit to the Federal Aviation Administration for the 206B project the same day he purchased the DMWR.  IAC, Ltd.’s confidentiality agreement expressly prohibited it from using the 206B data, and Bell did not authorize Van Horn to use the Bell data contained in the DMWR.  Because Bell presented some evidence to support each element of its trade secret misappropriation claim, it has shown a probable right to recover under this cause of action.  
Miller Paper Co., 
901 S.W.2d at 597. 

Next we review whether Bell met its burden of showing that a probable, imminent, and irreparable injury will result before trial absent a temporary injunction.  The evidence shows that appellants have possession of Bell data entitled to trade secret protection and are actively using that information to compete with Bell in the replacement blade market.  When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed.  
Fox, 
121 S.W.3d at 860; 
see also T-N-T Motorsports, Inc. v. Hennessey Motorsports
, 965 S.W.2d 18, 24 (Tex. App. —Houston [1st Dist.] 1998, no pet.) (holding that appellant possessed confidential information and was in a position to use it; thus, appellant was likely to use information to former employer’s detriment).  The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law. 
 Williams v. Compressor Eng’g Corp
., 704 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.) (citing
 FMC Corp. v. Varco Int’l, Inc.
, 677 F.2d 500, 503 (5th Cir.1982)).

Additional evidence shows that appellants’ blades were going to be available for shipment around June 15, 2004 and would be priced lower than Bell’s blade.  Bell’s Executive Director of Integrated Product Solutions testified that the creation of a lower-priced 206B replacement blade market would undermine the goodwill that Bell has with its clients, leading to an incalculable loss of business goodwill.   Loss of business goodwill or loss that is not easily calculated in pecuniary terms is sufficient to show irreparable injury for purposes of obtaining a temporary injunction.  
Byrd Ranch, Inc. v. Interwest Sav. Assoc.
, 717 S.W.2d 452, 454-55 (Tex. App.—Fort Worth 1986, no writ); 
Martin v. Linen Sys. for Hosp., Inc.
, 671 S.W.2d 706, 710 (Tex. App.—Houston [1st Dist.] 1984, no writ).  Accordingly, Bell has satisfied the imminent and irreparable injury requirement.

Based on all the foregoing evidence, we hold that Bell satisfied the temporary injunction requirements for its trade secret misappropriation claim.  Therefore, the trial court did not abuse its discretion by granting the temporary injunction.  We overrule appellants’ first, second, third, and sixth issues.
(footnote: 8) 

In their fourth and fifth issues, appellants complain that the temporary injunction is unduly vague, imprecise, and devoid of required findings.  Specifically, they complain that the temporary injunction fails to set forth the reasons for its issuance, explain why Bell would suffer irreparable harm without an injunction, and state the precise conduct proscribed by the injunction.  They also complain that the injunction is overbroad in its limitation of their livelihood beyond the scope of any putative trade secret or contractual protection. 

Every order granting an injunction shall set forth the reasons for its issuance.  
Tex. R. Civ. P. 
683.  The trial court is not required to explain its reasons for believing that the applicant has shown a probable right to final relief,
(footnote: 9) but it must give the reasons why injury will be suffered if the interlocutory relief is not ordered.  
Cook United, Inc., 
464 S.W.2d at 106,
 Transp. Co. of Tex. v. Robertson Transp.
, 261 S.W.2d 549, 553 (1953); 
 Hamby, 
609 S.W.2d at 868.  The reasons given by the trial court for granting or denying a temporary injunction must not be mere conclusionary statements.  
Int’l Bhd. of Elec. Workers Local Union 479 v. Becon Const. Co., Inc., 
104 S.W.3d 239, 244 (Tex. App.—Beaumont 2003, no pet.); 
Byrd Ranch, Inc.
, 717 S.W.2d at 454.  The requirement of specifying the reasons for granting a temporary injunction is mandatory, and noncompliance amounts to an abuse of discretion. 
 Hamby
, 609 S.W.2d at 868; 
Toby Martin Oilfield Trucking, Inc. v. Martin
, 640 S.W.2d 352, 355 (Tex. Civ. App.—Houston [1st Dist.] 1982, no writ). 

In this case, the injunction identifies Bell’s harm and explains why it is irreparable.  It explicitly states that Bell has shown that appellants have possession of Bell data entitled to trade secret protection and are actively using that information to compete with Bell in the replacement blade market.   Because harm to the trade secret owner may be presumed when a defendant possesses trade secrets and is in a position to use them, 
Fox, 
121 S.W.3d at  860; 
T-N-T Motorsports, Inc.
, 965 S.W.2d at 24, the trial court’s findings about appellants’ possession and use of Bell helicopter blade information constitute a reason that Bell would be harmed without injunctive relief.  The injunction further states that Bell’s injury is irreparable because “it cannot be adequately compensated in damages or the damages cannot be measured by any pecuniary standard” and that “a legal remedy may be also inadequate since an award of damages may come too late.”  Accordingly, we hold that the injunction adequately sets forth the reasons for its issuance by identifying Bell’s harm and explaining why it is irreparable.
(footnote: 10)
 We now turn to appellants’ complaint that the trial court failed to state the precise conduct proscribed by the injunction.  Appellants argue that the injunction specifies neither the information at issue nor the manner in which it may be used. 

Every order granting an injunction shall be specific in terms; it shall describe in reasonable detail and not by reference to the complaint or other document the act or acts sought to be restrained.  
Tex. R. Civ. P. 
683.  In this case, the injunction enjoins appellants and their agents, officers, servants, employees and attorneys, and anyone in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, from the following behavior:  

(1) using Bell trade secrets and confidential information in the manufacture of replacement blades for Bell’s 206B helicopter in competition with Bell; (2) disclosing Bell trade secrets to additional third parties; (3) directly or indirectly disclosing, transferring or using Bell’s proprietary information in any way, shape, manner or form; (4) destroying, altering, concealing or modifying any of their documents, records, electronic data, related to their activity in connection with the design, manufacture and testing of replacement blades; (5) copying, communicating, transmitting, publishing, disclosing or transferring to any person, any of Bell’s proprietary information related to this case; and (6) destroying, altering, concealing, or modifying any documents or records, including electronic data, concerning the gathering, use and/or disclosure of Bell proprietary information. 

The meaning of “Bell trade secrets and information” is apparent from the text of the injunction.  The injunction states that “Bell has shown that the information at issue is proprietary to Bell and is trade secret.”  It goes on to identify the “information at issue” as information pertaining to Bell’s 206B and OH-58 helicopter blades.   The injunction clearly prohibits appellants from using, disclosing, destroying, transferring, copying, communicating, transmitting or publishing this information.  Thus, the injunction is sufficiently specific. 

Because the injunction meets the requirements of Rule 683 by specifying the acts from which appellants are restrained and stating the reasons for its issuance, we overrule appellants’ fourth and fifth issues. 

In appellants’ seventh issue, they contend that the trial court erred in excluding the testimony of George Posey, the president of Newport Aeronautical Sales.  Appellants sought testimony from Posey that he obtained the DMWR through a FOIA request.  They obtained an affidavit from Posey and arranged for him to testify by telephone.  The trial court sustained Bell’s objection to Posey’s testimony in either form because appellants did not list him as a witness.  Appellants argue that the trial court abused its discretion in excluding Posey’s testimony because the expedited nature of the temporary injunction hearing was good cause for his nondisclosure and because his testimony was rebuttal testimony. 

A trial court must exclude a witness besides a named party if the witness was not disclosed unless the court finds that there was good cause for the failure to timely respond or that the failure to timely respond would not unfairly surprise or prejudice the other parties.  
Tex. R. Civ. P. 
193.6(a).  The burden of establishing good cause or the lack of unfair surprise or prejudice is on the party seeking to call the witness.  
Tex. R. Civ. P. 
193.6(b).  The Tarrant County Local Rules also require that the parties deliver to the court and the other parties a witness list at the time they report for trial.  
Fort Worth (Tex.) Civ. Dist. Ct. R. 3.03(
c
).  
On appeal, the party objecting to the exclusion of the testimony of an unidentified witness must show that the trial court abused its discretion in making its ruling.  
Beam v. Chaney
, 56 S.W.3d 920, 922 (Tex. App.—Fort Worth 2003, pet. denied).  

Here, the trial court did not abuse its discretion in excluding Posey’s testimony because appellants could have, and should have, listed Posey as a witness before the hearing.  Appellants obtained an affidavit from Posey two days before the hearing, yet they did not disclose their intention to call him as a witness until they sought to admit his testimony during their case-in-chief.  Because they offered Posey’s testimony during their case-in-chief, it cannot properly be characterized as rebuttal testimony.  
See
 
Tex. R. Civ. P.
 265 (stating that rebuttal testimony shall be offered after both sides present their cases-in-chief).  Furthermore, the record is devoid of any showing by appellants that Bell would not be unfairly surprised or prejudiced by Posey’s testimony.  

Posey’s proffered testimony was also inadmissible hearsay. 
 See
 
Tex. R. Evid.
 802.  His affidavit did not fall under any exception to the hearsay rule and his telephonic testimony was inadmissible because he had not been previously deposed and it would not have been visually recorded.  
See
 Tex. Civ. Prac. & Rem. Code Ann.
 § 30.012 (Vernon Supp. 2004-05). 

Finally, even if the exclusion of Posey’s testimony had been error, it would not have been harmful because Bell produced some evidence that the DMWR contained trade secrets, and the apparently erroneous disclosure of trade secrets through a FOIA request does not affect appellants’ liability for misappropriation of those trade secrets.  
Williams, 
681 F.2d at 164.  For all  these reasons, we overrule appellants’ seventh issue. 

In appellants’ final issue, they complain that the trial court erred in setting the amount of Bell’s bond at $350,000 because it is entirely insufficient.  The trial court is required to set a bond when it grants a temporary injunction.  
Tex. R. Civ. P. 
684.  The applicant must post the bond, and it is payable to the adverse party if the temporary injunction is dissolved at trial.  
Id.
  The purpose of a bond is to provide protection to the enjoined party for any possible damages occurring as a result of the injunction.  
Bayoud v. Bayoud
, 797 S.W.2d 304, 312 (Tex. App.—Dallas 1990, writ denied).  The determination of the adequacy of the bond set by the trial court is to be made on a case-by-case basis based upon the record before the reviewing court. 
 Maples v. Muscletech, Inc.
, 74 S.W.3d 429, 431 (Tex. App.—Amarillo 2002, no pet.); 
Stone v. Griffin Communications & Sec. Sys., Inc.
, 53 S.W.3d 687, 696 (Tex. App.—Tyler 2001, no pet.).  The amount of a bond is within the trial court’s sound discretion and will not be disturbed on appeal absent an abuse of that discretion.  
Four Stars Food Mart, Inc. v. Tex. Alcoholic Beverage Comm’n
, 923 S.W.2d 266, 269 (Tex. App.—Fort Worth 1996, no writ); 
Khaledi v. H.K. Global Trading, Ltd.
, 126 S.W.3d 273, 286 (Tex. App.—San Antonio 2003, no pet.); 
Maples
, 74 S.W.3d at 431. 

The record before us does not indicate that the trial court abused its discretion in setting the amount of the bond.  Although appellants put on evidence that their investment costs exceeded the bond amount, they would not be able to recover those costs if the temporary injunction were dissolved at trial because their investment costs would not be damages caused by the issuance of the injunction.  
See
 
Bayoud, 
797 S.W.2d at 312.  Furthermore, nothing in the record shows that appellants’ lost profits for the duration of the injunction would exceed $350,000.  Van Horn merely testified that “the income that we expected to derive from the manufacturing and selling rotor blades to support my family would be lost.”  This testimony is insufficient to prove lost profits.  
See
 
Tex. Instruments, Inc. v. Teleton Energy Mgmt., Inc.
, 877 S.W.2d 276, 279 (Tex. 1994) (holding that lost profits should be supported with data 

from which they may be ascertained with a reasonable degree of certainty and exactness and will not be supported by uncertain or speculative evidence).  Therefore, we overrule appellants’ final issue and affirm the trial court’s order granting the temporary injunction. 

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED: March 3, 2005

FOOTNOTES
1:
See
 
Tex. Civ. Prac. & Rem. Code Ann
. § 51.014(a)(4) (Vernon Supp. 2004-05). 

2:
IAC, Ltd., f/k/a IAC Co., d/b/a International Aviation Composites; Bonded Structures, Ltd., f/k/a Parsons Composites, L.L.C.; Van Horn Aviation, L.L.C.; and Parts Manufacturing Associates 

3:
The other appellants, Bonded Structures, Ltd. and Parts Manufacturing Associates, are owned by Randy Stevens and are also associated with the manufacture of the replacement blade. 

4:
Relying on
 
Numed, Inc. v. McNutt
, 724 S.W.2d 432, 435 (Tex. App.—Fort Worth 1987, no writ), appellant argues that the 206B data lost its trade secret protection when Bell disclosed the OH-58 data to the Army because then it could be “discovered by anyone.”  Appellant assumes that the Army disclosed the DMWR for the OH-58 helicopter to its vendors without restricting its use.  The fact that the DMWR was not available through Attorney General publication centers, however, is some evidence that the Army took steps to limit the availability of the DMWR and that it was not discoverable “by anyone.” 

5:
This case is distinguishable from 
Flotec, Inc. v. S. Research, Inc.
, 16 F. Supp. 2d 992, 1004-05 (S.D. Ind. 1998)
.  In 
Flotec
, an oxygen tank pressure valve producer sought injunctive relief against a competitor to whom it had given drawings of several component parts.  The court affirmed the trial court’s denial of relief, citing the appellant’s failure to “take even the most elementary steps to protect the technical drawings it provided to [the appellee].” 
 
Flotec
, 16 F. Supp. 2d at 1004-05.  Unlike the appellant in 
Flotec
, who did not mark its drawings confidential or obtain a confidentiality agreement from the appellee, Bell marked its OH-58 drawings confidential, used confidentiality agreements with its vendors, and took additional measures to safeguard its proprietary information. 

6:
Even if the DMWR was properly obtained through a FOIA request, Bell may still prevail on its misappropriation of trade secrets claim by proving its allegation that appellants actually used the 206B data that Bell had disclosed to IAC, Ltd., rather than the OH-58 data contained in the DMWR.  The fact that information is discoverable by lawful means does not deprive its owner of protection from one acquiring it by unfair means.  
See
 
In re Bass
, 113 S.W.3d at 739; 
Fox, 
121 S.W.3d at 858.

7:
The pertinent part of the Restatement states, “[o]ne who discloses or uses another’s trade secret, without a privilege to do so, is liable to the other if . . . he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake.”  
Restatement (First) of Torts 
§ 757 (1939); 
Stewart & Stevenson Svcs., Inc. v. Serv-Tech, Inc.
, 879 S.W.2d 89, 95 (Tex. App.—Houston [14 Dist.] 1994, writ denied).  The trade secret sections of the Restatement of Torts are now found in the 
Restatement (Third) of Unfair Competition
.  
See
 
Restatement (Third) of Unfair Competition 
§§ 39-45 (1995); 
In re Bass
, 113 S.W.3d at 739. 

8:
Because Bell satisfied the temporary injunction requirements for its trade secret misappropriation claim, we do not address whether Bell presented sufficient evidence to sustain the temporary injunction based on its other causes of action.  
See
 Tex. R. App. P.
 47.1.

9:
The trial court was not required to explain its reasons for believing that Bell had shown a probable right to final relief.  
See State v. Cook United, Inc.
, 464 S.W.2d 105, 106 (Tex. 1971); 
Smith v. Hamby, 
609 S.W.2d 866, 868 (Tex. Civ. App.—Fort Worth, 1980 no writ).  Therefore, we will not address appellants’ arguments attacking that portion of the injunction. 

10:
The injunction order in this case is distinguishable from the order in
 Hamby
, which did not state why the applicant would suffer harm or be endangered by probable injury if not granted the preliminary injunction.  
Hamby, 
609 S.W.2d at 868.