Paula O'Brien v. Rattikin Title Co.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-238-CV

PAULA O’BRIEN APPELLANT

V.

RATTIKIN TITLE COMPANY APPELLEE

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In this accelerated appeal, Appellant Paula O’Brien complains of an injunction issued by the trial court enforcing the terms of a covenant not to compete contained in an employment agreement between O’Brien and Appellee Rattikin Title Company (“Rattikin”).  In three issues, O’Brien contends that the trial court abused its discretion by granting the temporary injunction because Rattikin’s promises to O’Brien are illusory, Rattikin does not have a legitimate business interest worthy of protection, and the hardship on O’Brien outweighs Rattikin’s need to protect any legitimate business interest.  We affirm.

II.  Factual and Procedural Background

This is the case of the enjoined escrow agent.  Paula O’Brien is a seasoned real estate closer, or escrow agent, with over twenty years experience.  She began work at Rattikin in February 2000 as a vice-president in charge of one of Rattikin’s branch offices.  O’Brien’s duties included supervising the other employees at the branch,  coordinating the entire process of closing real estate transactions, bringing in and maintaining business, and generating profits.

In connection with her initial employment with Rattikin, O’Brien executed an “Employment Agreement” and a “Confidentiality Agreement and Covenant Not to Compete,” each of which expressly incorporated the other.  The term of her employment was to be for five years, beginning April 1, 2000 and continuing to March 31, 2005, and, if not terminated by the end of the term, was to continue on a month-to-month basis thereafter.  Her salary was guaranteed for one year.  Paragraph 2(a) of the employment agreement enumerated four ways in which the agreement and employment relationship could be terminated, and paragraph 2(b), entitled “Layoff,” also allowed Rattikin to end the agreement if O’Brien was laid off “solely for economic reasons.”  Further, Rattikin agreed in paragraph 3 of the confidentiality agreement, entitled “Employer’s Agreement,”  to provide O’Brien with any necessary specialized training and proprietary and confidential information.  On the other hand, O’Brien agreed in paragraph 4, entitled “Employee’s Agreement,” and in paragraphs 5, 6, and 7 that during the term of the Agreement and for a two-year period following the termination of the Agreement she would refrain from certain acts, including working for a competitor in Tarrant County, recruiting Rattikin employees to work for a competitor, diverting Rattikin’s business elsewhere, and using or revealing Rattikin’s proprietary or confidential information.  An “Amendment to Contract,” signed February 29, 2000, paid O’Brien an additional $15,000 for signing the agreements.

In mid-April 2005, O’Brien informed Rattikin that she intended to leave the company at the end of the month.  As it turned out, she went to work for a competitor, North American Title, took her branch employees with her, and solicited Rattikin’s underwriting counsel to also leave.  According to Rattikin, by May 2, 2005, she was performing the identical duties at her new job with her old employees, was closing transactions with her old open files numbering about one hundred that she had at Rattikin, and was located on the same street as her old Rattikin branch office.

Rattikin sought relief through the courts and obtained a temporary restraining order, followed by a temporary injunction that prohibits O’Brien from soliciting Rattikin’s employees from leaving their employment, from using Ratiken’s confidential information, and from working as a real estate closer in Tarrant County.  It is from this injunction that O’Brien appeals.

III.  Standard of Review—Temporary Injunction

This is a road well-traveled.  As we recently stated in 
31-W Insulation Co., Inc. v. Dickey
, 144 S.W.3d 153, 156 (Tex. App—Fort Worth 2004, pet. withdrawn), the issue before the trial court in a temporary injunction hearing is whether the applicant is entitled to preserve the status quo of the subject matter of the suit until the case is tried on the merits.  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978).  An applicant for a temporary injunction must plead and prove (1) a cause of action against the defendant, (2) a probable right to relief, and (3) a probable, imminent, and irreparable injury in the interim.  
Butnaru v. Ford Motor Co., 
84 S.W.3d 198, 204 (Tex. 2002).  The decision to grant or to deny a request for a temporary injunction lies with the sound discretion of the trial court and will only be disturbed for an abuse of that discretion.
  Id.
  Therefore, we must view the evidence in the light most favorable to the trial court’s order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion.  
IAC, Ltd. v. Bell Hellicopter Textron, Inc.,
 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.).  A trial court does not abuse its discretion as long as there is some evidence to support the trial court’s decision.  
Id
.
(footnote: 2)
IV.  Probable Right to Relief—Breach of Contract

In her first, second, and third issues, O’Brien argues that “only illusory promises [are] ancillary” to the noncompete covenant, that Rattikin did not establish that it had a legitimate business interest worthy of protection, and that the hardship on her outweighs Rattikin’s interest in protecting its legitimate business interests.  Each one of O’Brien’s issues implicitly challenges the trial court’s finding that Rattikin established a probable right to relief at trial.  Consequently, we will review the trial court’s exercise of discretion in determining that Rattikin established a probability of success at trial.
 

A.  
Noncompete Covenant Requirements

Rattikin asserted a breach of contract claim, arguing, among other things, that “O’Brien’s new employment by North American Title in the same area of Tarrant County in which she worked for Rattikin Title constitutes a breach of the Agreement’s non-compete provision.”  Subchapter E of chapter 15 of the Texas Business and Commerce Code sets forth the standards for establishing an enforceable covenant not to compete.  
See 
Tex. Bus. & Com. Code Ann.
 § 15.50-15.52.  Section 15.51(b) provides that “[i]f the primary purpose of the agreement to which the [noncompete] covenant is ancillary is to obligate the promisor to render personal services . . . the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code.”  
Id.
 § 15.51(b).  Thus, under the appropriate standard of review, we will examine the record to determine if Rattikin presented some evidence that the covenant not to compete meets section 15.50's criteria:  the covenant (1) must be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made and (2) must contain reasonable time, geographical area, and scope of activity limitations that do not impose a greater restraint than is necessary to protect the promissee’s goodwill or other legitimate business interests.   
Id
. § 15.50(a); 
Dickey
, 144 S.W.3d at 157.  

In 
Dickey
, we cited 
Light 
and discussed
 
how to determine whether the noncompete covenant meets the first requirement of section 15.50—whether it is ancillary to or part of an otherwise enforceable agreement.  
Dickey
, 144 S.W.3d at 157.  We reasoned,

First, we must determine whether an agreement “otherwise” exists apart from the noncompete covenant.  That is, we set aside the Agreement’s noncompete covenants and determine whether any other promises remain to bind the parties under the Agreement.  Second, we must examine the remaining promises to ensure that the Agreement is enforceable apart from the noncompete covenant—that the promises are non-illusory promises that the parties are in fact bound to perform.  Third, if we have concluded that an “otherwise enforceable agreement” exists, we must determine whether the noncompete covenant is a part of or ancillary to that otherwise enforceable agreement.  We make this final determination by examining whether the Agreement’s remaining promises satisfy the following two factors:  (1) the employer’s promise must give rise to the employer’s interest in restraining the employee from competing; and (2) the noncompete covenant must be designed to enforce the employee’s return promise in the otherwise enforceable agreement.  
“Unless both elements of the test are satisfied, the [noncompete] covenant cannot be ancillary to or a part of an otherwise enforceable agreement, and is therefore a naked restraint of trade and unenforceable.”

Dickey
, 144 S.W.3d at 157 (citations ommitted).

B.  Analysis

1.  Ilusory Promises

O’Brien concedes that the first step under the 
Light 
analysis is met—that is, that an agreement exists apart from the non-compete clauses.  But she argues that promises concerning confidential and proprietary information and specialized training were ancillary, but illusory, while the payment of one year’s salary, not dependent on a term of employment, was not illusory, but was not ancillary because it was not the sort of promise giving rise to an interest worthy of the protection of a non-compete agreement.  We will concern ourselves only with Rattikin’s promise to provide confidential and proprietary information and specialized training because it is dispositive to our review.
(footnote: 3)  

O’Brien argues that the information and training promises were illusory because the decision to provide them was a unilateral decision by Rattikin who could decide that the information and training was not “necessary” and because O’Brien could be terminated at any time before she began work on April 1, 2000, in that a termination for “economic reasons” is purely arbitrary.  Rattikin responds that the Agreement contains an explicit five-year term, that O’Brien’s testimony reflect that she understood this, and that the Agreement unambiguously stated that Rattikin would supply the provided information and training to O’Brien.  We agree with Rattikin’s response.

Rattikin presented evidence outlining the relevant terms of the contract.  William Jackson Rattikin III testified about paragraph 3 of the confidentiality agreement, which reads as follows:

Employer hereby agrees to provide to Employee any specialized training necessary, in the opinion of Employer, to allow Employee to conduct the duties of employment with Employer.  Employer further agrees to provide to Employee any of Employer’s proprietary and confidential information necessary to allow Employee to conduct the duties of employment with Employer.

Rattikin III also testified about paragraphs 4 and 5, which provide that as consideration for Rattikin’s promises, O’Brien will not work for a competitor in Tarrant County, recruit Rattikin employees to work for a competitor, divert Rattikin’s business elsewhere, or use or reveal Rattikin’s proprietary or confidential information. 

From the plain language of the promises, the trial court could have concluded that Rattikin was in fact bound to provide O’Brien with confidential and proprietary information and specialized training.  The agreement merely gives Rattikin the option of determining, in its opinion, 
what 
confidential and proprietary information and training it should provide O’Brien during the course of her employment.  Indeed, Rattikin III testified that Rattikin provided O’Brien with confidential and proprietary information and specialized training.  At the injunction hearing, O’Brien admitted the validity of the agreement and understood that it consisted of, at a minimum, a five year term.  Thus, the employment relationship was not at-will, and the promises were not illusory because Rattikin committed to employing O’Brien for a period of five years and on a monthly basis thereafter.  
See Dickey
, 144 S.W.3d at 158-59.  O’Brien’s arguments that the promises are illusory, in part because she was an at-will employee, are unpersuasive.  Consequently, the evidence viewed in the light most favorable to the trial court’s order demonstrates that Rattikin’s promises to provide O’Brien confidential and proprietary information and specialized training are not illusory and are capable of serving as consideration for the agreement, thus binding the parties apart from the noncompete covenant.  O’Brien concedes that the promises are ancillary.  Accordingly, we hold that Rattikin established a probable right to relief by presenting some evidence of an “otherwise enforceable agreement.”  We overrule O’Brien’s first issue.

2.  Legitimate Business Interest

O’Brien argues in her second issue that Rattikin failed to establish that it had any legitimate business interest requiring protection by a noncompete covenant—a requirement under the second prong of section 15.50(a).  
See 
Tex. Bus. & Com. Code Ann.
 § 15.50(a).  Examples of legitimate, protectable business interests include business goodwill, trade secrets, and other confidential and proprietary information.  
DeSantis v. Wackenhut Corp.
, 793 S.W.2d 670, 682 (Tex. 1990), 
cert. denied
, 498 U.S. 1048 (1994).  And as O’Brien points out, section 15.50(a) expressly identifies goodwill as a legitimate business interest.  
At the temporary injunction hearing, Rattikin presented evidence that it has “expended substantial amounts of time and funds in establishing a reputation in the State of Texas, and particularly in all counties” where Rattikin operates.  Rattikin further presented evidence that it provided to O’Brien confidential and proprietary information in the form of a “company closing manual,” a cumulative know-how, internal document developed over the last twenty years; self-generated marketing documents containing information about realtors, other title companies, and customer solicitations; and financial data, including budget information.  Accordingly, viewing the evidence in the light most favorable to the trial court’s order, we hold that Rattikin established a probable right to relief by presenting some evidence of a legitimate business interest worthy of protection by its noncompete covenant.  We overrule O’Brien’s second issue.

3.  Hardship

Without citing any authority, O’Brien argues that the hardship placed upon O’Brien by the noncompete covenant outweighs Rattikin’s need to protect any legitimate business interest it might have in the confidential information. O’Brien reasons that because most files close in thirty to sixty days, and the injunction order preventing O’Brien from working as a closer had been in effect for more than sixty days when O’Brien filed her appellate brief, the injunction’s time limitation is unreasonably lengthy.

An injunction is an equitable remedy, and the trial court must weigh the respective conveniences and hardships of the parties and balance the equities.  
Computek Computer & Office Supplies, Inc., v. Walton
, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.).  A trial court may consider whether the applicant would suffer significant or slight injury if the injunction were erroneously denied and whether injury to the opposing party would be significant or slight if the injunction were erroneously granted.  
T.F.W. Mgmt., Inc., v. Westwood Shores Prop. Owners Assoc.
, 162 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The record shows that the trial court weighed the equities involved when considering whether to grant or deny the temporary injunction.  At the conclusion of the temporary injunction hearing, the trial court recognized that the evidence demonstrated that O’Brien received confidential information during her employment with Rattikin, that the covenant’s geographical limitation covers only Tarrant County, and that the covenant’s purpose was meant in part to retain O’Brien as an employee of Rattikin and to prevent Rattikin’s competitors from getting an unfair advantage by hiring an employee similar to O’Brien—an individual with years of training and an extensive customer base.  The trial court also recognized that certain information O’Brien possessed was not confidential and that O’Brien had customers prior to joining Rattikin that intended to continue doing business with her wherever she worked.  The trial court’s focus, however, seemed to be on the covenant’s two year time limitation, which is at the heart of O’Brien’s argument.  O’Brien testified that she thought her contract with Rattikin was limited to only five years’ employment.  She testified that she honored the agreement for five years and that she does not deny its validity for that period of time.  However, paragraph 6 of the confidential agreement and noncompete covenant clearly reads as follows:

Duration
. Employee hereby covenants and agrees that this Agreement shall be in effect during Employment and for two (2) year(s) following Involuntary Termination of employment from Employer, or Voluntary Resignation by Employee, and so long as there has not been a material breach of the Employment Agreement by Employer.

In considering this portion of the contract and O’Brien’s  understanding thereof, the trial court stated,

I’m going to tell you the problem that we have here is that she admitted.  She didn’t have a lawyer look at this, and now she’s coming back saying . . . King’s X, I’m [sic] really didn’t mean it.

 . . . .

What do I do?  She sat her[e] and admitted under oath that it was a valid agreement, and you’re coming in, and you lawyers are saying, well, it’s really not, but she knows it’s a valid contract and it was . . . valid.

. . . .

I’m not going to reform [the] two years.  I’m going to tell you that because there’s no case law that tells me that two years is extraneous.  I haven’t seen any.  I haven’t been provided anything.

Our task in this appeal is to determine whether the trial court abused its discretion in finding that O’Brien proved a probable right to relief at trial, which it expressly found at the conclusion of the hearing.  
See Butnaru, 
84 S.W.3d at 204
.  Our job is not to determine whether the covenant is enforceable.  
See Cobb
, 109 S.W.3d at 882-83.  Accordingly, we cannot say that the trial court abused its discretion in balancing the equities involved, concluding that the time limitation was not longer than necessary to protect Rattikin’s legitimate business interests, and, thus, determining that Rattikin proved a probable right to relief at trial.  We overrule O’Brien’s third issue to the extent she contends that the hardship arguably suffered by her outweighs Rattkin’s desire to protect its business interests.

V.  Irreparable Injury

In part of O’Brien’s third issue, she briefly argues that Rattikin failed to show that it would suffer irreparable injury and harm before trial absent a temporary injunction.
 
 
“An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.”  
Butnaru
, 84 S.W.3d at 204.  Here, Rattikin presented evidence that O’Brien went to work for a competitor (on the same street) immediately after leaving Rattikin, that both of the Rattikin employees who worked with O’Brien in her Tarrant County office left along with her, and that Rattikin has to compete now not only with O’Brien, but against itself because, according to Rattikin III, 

[w]e helped train Mrs. O’Brien and her staff.  We marketed her as being a professional, also as being one of the best in the business in that area, and now that whole staff is over at North American, and I’m trying to compete with that, who I’ve already trained and set up in business, so I’m competing against myself here.

Rattikin III further testified that he could not put a dollar figure on the harm Rattikin has allegedly sustained.  Accordingly, viewing the evidence in the light most favorable to the trial court’s order, we hold that Rattikin presented some evidence of a probable, imminent, and irreparable injury in the absence of a temporary injunction.  The trial court did not abuse its discretion by granting the temporary injunction.  We overrule O’Brien’s third issue.

VI.  Conclusion

Having overruled all three of O’Brien’s issues, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED: February 23, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Thus, the trial court at a temporary injunction hearing only considers whether the applicant showed a probable right to relief and irreparable injury, not the underlying merits of the controversy, and an appeal from an order granting or denying a temporary injunction based on a covenant not to compete does not present for appellate review the ultimate question of whether the covenant is enforceable under section 15.50 of the Texas Business and Commerce Code.  
See 
Tex. Bus. & Com. Code Ann.
 § 15.50 (Vernon 2002); 
Davis
, 571 S.W.2d at 861-62; 
Tom James of Dallas, Inc. v. Cobb
, 109 S.W.3d 877, 882-83 (Tex. App.—Dallas 2003, no pet.).

3:
Initially, we note that O’Brien’s argument regarding Rattikin’s promise to provide confidential information is logically unsound because a noncompete covenant can only be ancillary to or part of “an otherwise enforceable agreement.”  An illusory promise (standing alone) prevents the formation of “an otherwise enforceable agreement,” thus precluding the noncompete covenant from being ancillary thereto.  Nonetheless, we will examine Rattikin’s promise in order to determine if it is illusory.