NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3617
_____

ADP, LLC

v.

JORDAN LYNCH,
                    (D.C.# 2-16-cv-01053)

ADP, LLC

v.

JOHN HALPIN,
                    (D.C.# 2-16-cv-01111)

                              Jordan Lynch; John Halpin,
                                         Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 2-16-cv-01053 and 2-16-cv-01111)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
January 17, 2017

Before: AMBRO, VANASKIE, and SCIRICA, Circuit Judges

(Opinion filed: February 7, 2017)

————————————

OPINION[*]

————————————

AMBRO, <u>Circuit Judge</u>

Jordan Lynch and John Halpin challenge the District Court's partial grant of a preliminary injunction in favor of their former employer, ADP, LLC. The injunction partially enforced noncompete agreements that Lynch and Halpin allegedly agreed to online when accepting stock awards. The crux of Lynch and Halpin's arguments is that they had only checked a box on the website confirming that they had read, but not agreed to, those noncompetes. As the District Court found, however, after presumably reading that acceptance of the stock award was conditioned on agreement to the noncompetes, Lynch and Halpin nonetheless accepted the stock award. That sealed the deal for the Court, and it does for us as well; thus we affirm.

## I.    Background

ADP provides business outsourcing and software services to its clients, such as human resources, payroll, and benefits administration. Lynch and Halpin worked in sales at ADP for six years before resigning and joining its direct competitor, Ultimate Software Group. While employed at ADP, Lynch and Halpin on five occasions accepted incentive stock awards that were offered to select employees for their performance. To accept these stock awards, ADP employees were required to access a webpage containing the award documents. It stated that "you must select the checkbox to indicate you have read

———————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

all associated documents before you can proceed" and provided a checkbox next to the statement "I have read all the documents below." App. 153, 178.

Next to the checkbox was a link to open a 19-page PDF document, which included 1) the award plan, 2) the award agreement, and 3) the noncompete agreement. The first page of the award agreement stated that the employee would have 90 days to review the terms and decide whether to accept. It also specifically advised employees that the acceptance of the award was conditioned on agreement to the noncompete. The first page of the noncompete reiterated this condition. After they checked the "I have read all the documents" box, employees had to enter their personal password and click the "Accept Grant" or "Reject Grant" buttons. App. 178, 868. The noncompete agreement stated that, for a period of 12 months after the end of employment, the employee 1) would not join an ADP competitor and 2) would not solicit any business from any current or prospective ADP client.

Lynch and Halpin, as noted, resigned from ADP and started working for Ultimate Software. Shortly thereafter ADP brought suit alleging that Lynch and Halpin were soliciting current and prospective ADP clients. It later asked the District Court for preliminary injunctive relief to enforce the noncompete, and the Court granted the preliminary injunction in part. While it enjoined Lynch and Halpin from soliciting current ADP clients, it restricted solicitation of prospective ADP clients only to the extent Lynch and Halpin gained knowledge of the prospects while employed at ADP. The Court also limited the injunction to one year and permitted Lynch and Halpin to continue

3

to work for their new employer. It thereafter denied reconsideration, and this appeal followed.

## II.     Jurisdiction and Standard of Review

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction over the grant of preliminary injunctive relief under 28 U.S.C. § 1292(a)(1). "We employ a tripartite standard of review for . . . preliminary injunctions. We review the District Court's findings of fact for clear error. Legal conclusions are assessed de novo. The ultimate decision to grant or deny the injunction is reviewed for abuse of discretion." *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (alteration in original) (citation and quotation marks omitted). The scope of our review of a preliminary injunction is narrow, however, "because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994) (alteration in original) (citation and quotation marks omitted).

## III.    Analysis

Lynch and Halpin raise two principal arguments: (1) because some facts were contested, the District Court had to hold a hearing before granting the injunction; and (2) because they only affirmed that they read the relevant documents, nothing proves they agreed to their contents. Neither argument is persuasive.

The District Court did not need to hold a hearing. Contrary to Lynch and Halpin's contentions, the Federal Rules "do[ ] not make a hearing a prerequisite for ruling on a

4

preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990). Rather, "[i]t has long been recognized that a preliminary injunction may issue on the basis of affidavits and other written evidence, without a hearing, if the evidence submitted by both sides does not leave unresolved any relevant factual issue." *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3d Cir. 1982) (per curiam). Here the evidence submitted by both sides—which included documents, affidavits, and even deposition testimony—left no unresolved issue of relevant fact. It is undisputed that Lynch and Halpin breached the noncompetes by joining ADP's direct competitor and working in sales in the same territories they covered at ADP. Though they dispute ADP's contention that they actually solicited ADP's clients, the District Court found that there "was an imminent risk of Defendants soliciting former ADP clients, if they have not done so already." App. 16. It is also undisputed that Lynch and Halpin accepted their stock awards on the ADP website. Accordingly, no hearing was required.

The Court also did not err in granting the preliminary injunction. It properly weighed the four factors required to grant injunctive relief: (1) reasonable likelihood of success on the merits, (2) irreparable injury, (3) balance of the harms, and (4) the public interest. *See Ayers*, 710 F.3d at 105. While Lynch and Halpin emphasize that they "were never required to check a box that said 'I read and agreed to or accept or acknowledge the terms set forth thereunder,'" App. Br. 19, they checked a box affirming that they "read" the documents. The documents explicitly advised them that the noncompetes were a condition of accepting the stock award. After checking this box, they also clicked the "Accept Grant" button and entered their personal passwords. It is thus irrelevant that

5

Lynch and Halpin contend that they do not recall reading the documents. *See Stelluti v. Casapenn Enterprises, LLC*, 1 A.3d 678, 690 (N.J. 2010) ("When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms."). The District Court thus correctly concluded that Lynch and Halpin were likely bound by the terms of the noncompetes.

Next, Lynch and Halpin argue that the injunction was overbroad and not reasonably tailored under New Jersey law. *See Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 889 (N.J. 1988) ("[R]estrictive covenants will be enforced to the extent that they are reasonable as to time, area and scope of activity, necessary to protect a legitimate interest of the employer . . ."). While perhaps a *permanent* injunction should be narrower, the District Court's grant of *preliminary* injunctive relief was reasonable. *Compare Am. Tel. & Tel. Co.*, 42 F.3d at 1426–27 ("The scope of our review is narrow because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts.") (quotation marks omitted); *with McLendon v. Cont'l Can Co.*, 908 F.2d 1171, 1177 (3d Cir. 1990) ("[A] permanent injunction requires closer scrutiny 'since permanent injunction cases present a more fully developed record.'") (citation omitted). The District Court forbade Lynch and Halpin from soliciting ADP's current clients but allowed them to solicit prospective ADP clients of whom they gained no knowledge while employed at that entity. This injunction will last for a year only, and Lynch and Halpin can remain in their current positions for their new employer even though it is ADP's direct competitor. While a permanent junction might permit Lynch and Halpin to solicit some of ADP's

6

current customers, we cannot say that the District Court's grant of preliminary injunctive relief as to those customers was an abuse of discretion.

Accordingly, we affirm the issuance of the preliminary injunction.