31-W v. Phil Dickey

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-364-CV

31-W INSULATION CO., INC. APPELLANT

V.

PHIL DICKEY APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

Appellant 31-W Insulation Co., Inc. (“31-W”) appeals from the trial court’s denial of 31-W’s request for a temporary injunction seeking to prevent appellee Phil Dickey, 31-W’s former employee, from violating the terms of a noncompete covenant contained in the parties’ employment contract.  In two points, 31-W complains that the trial court erred in finding that (1) the noncompete covenant was invalid under Texas law and (2) the motion for temporary injunction had to be verified.  We affirm.

II.  FACTUAL AND PROCEDURAL BACKGROUND

Phil Dickey is an experienced insulation salesman, having worked in that field since the early 1980s.  On October 3, 2001, Dickey began work for the Arlington, Texas office of 31-W selling insulation.  That same day, Dickey executed a Salesman Employment Agreement (the “Agreement”) as a condition of being hired.  In the Agreement, 31-W agreed to pay Dickey a commission on his sales, reimburse his work-related expenses, and pay him a monthly automobile allowance.  The Agreement specified that Dickey was an at-will employee of 31-W and could be terminated at any time, with or without cause, upon two weeks’ notice.  Although the Agreement required 31-W to continue to compensate Dickey for the entire two-week notice period, it also gave 31-W the option of immediately relieving Dickey of any further duties upon his termination.

The Agreement further stipulated that, “[i]n return for being granted access to [e]mployer’s [c]onfidential [i]nformation,” Dickey promised “not to disclose or use that [c]onfidential [i]nformation other than in the proper performance of his duties or with the prior written consent of [the] [e]mployer.”  Dickey agreed to account for all company property in his possession upon termination of his employment and to return all documents in his possession or control that contained any confidential information to 31-W.

The Agreement also contained a noncompete clause, under which Dickey agreed to refrain from competing with 31-W in “the area within a hundred mile radius of any of [e]mployer’s locations at which [e]mployee worked” for six months following the termination of his employment with 31-W.  Dickey agreed that, if he violated the Agreement, “the terms of each covenant violated shall be automatically extended for a period of six months from the date on which [the] [e]mployee permanently ceases the violation” and that 31-W would be entitled to injunctive relief restraining him from breaching or threatening to breach the Agreement. 

Six weeks before completing his second full year of employment, Dickey resigned from 31-W, apparently in a dispute over commission payments.  The following Monday, August 18, 2003, he began work selling insulation for Select Insulation Company (“Select”), also located in Arlington, Texas and began approaching superintendents in various subdivisions in the Dallas-Fort Worth area about bidding insulation jobs on behalf of Select.  Shortly thereafter, Dickey filed suit against 31-W under the Texas Uniform Declaratory Judgment Act “seeking a declaratory judgment . . . declaring that the [a]greement, including but not limited to [p]aragraphs 7b and 7c in particular [the noncomplete covenants], is not enforceable and that [p]laintiff is not in breach or violation of the [a]greement by virtue of his employment with his new employer.”  31-W subsequently answered and filed a counterclaim, alleging breach of the Agreement by Dickey and seeking a temporary injunction in accordance therewith.  Following a two-day hearing, the trial court denied the temporary injunction request, prompting this appeal. 

III.  STANDARD OF REVIEW—THE TRIAL COURT’S DENIAL OF A TEMPORARY INJUNCTION

We review the denial of a temporary injunction under the abuse of discretion standard.  
Walling v. Metcalfe
, 863 S.W.2d 56, 57 (Tex. 1993).  The enforcability of a covenant noncompete is a question of law.  
Light v. Centel Cellular Co. of Tex., 
883 S.W.2d 642, 644 (Tex. 1994).  The issue before the trial court in a temporary injunction hearing is whether the applicant is entitled to preserve the status quo of the subject matter of the suit until the case is tried on the merits.  
Davis v. Huey
, 571 S.W.2d 859, 862 (Tex. 1978).  For this court to reverse the trial court, it must be shown that the trial court misapplied the law to the facts or that the evidence does not reasonably support the trial court’s ruling.  
State v. S.W. Bell Tele. Co.
, 526 S.W.2d 526, 528 (Tex. 1975).  Under this standard, the evidence and its valid inferences will be viewed in the light most favorable to the ruling, and we may not substitute our judgment for the trial court’s.  Only arbitrary action by the trial court exceeding the bounds of reasonable discretion will warrant a reversal.  
Butnaru v. Ford Motor Co.
, 84 S.W.3d 198, 204 (Tex. 2002).  Where, as here, the trial court did not file findings of fact and conclusions of law, we must uphold the court’s ruling on any legal theory that is supported by the evidence.  
Davis
, 571 S.W.2d at 862.  

IV.  LEGAL ANALYSIS—IS DICKEY INSULATED FROM LIABILITY?

In it’s first point, 31-W argues that the trial court erred in refusing to enjoin Dickey from selling insulation for a competitor because the trial court found the noncompete covenant to be invalid under Texas statutory law.  
See
 
Tex. Bus. & Com. Code
 
Ann.
 § 15.50 (Vernon 2003).   Simply put, it is 31-W’s contention that because Dickey is in breach of the Agreement, it is entitled to an injunction pursuant to the Agreement’s own terms.  Accordingly, 31-W must show that the Agreement is valid and that there has been “an actual or threatened breach of this [a]greement” entitling it to injunctive relief as set forth in its paragraph 8.  Paragraph 7 of the Agreement provides that “[f]or a period of six months following employee’s termination, [e]mployee shall not, directly or indirectly, enter into competition with [e]mployer in a [r]estrictive [t]erritory . . . [which] is the area within a 100-mile radius of any employer’s locations.”  After leaving 31-W’s employment, Dickey immediately went to work for 31-W’s local competitor.  At the temporary injunction hearing, Dickey testified as follows:

Q. Finally, Mr. Dickey, I just want to ask you:  You do not dispute that since your employment ended with 31-W you have been competing with 31-W for [a] competitor in the Dallas-Fort Worth area, correct? 

A. Correct. 

We conclude that there has been a breach of the Agreement, thereby leaving enforceability of the Agreement the issue to be decided.

The viability of noncompete covenants is addressed in subchapter E of Chapter 15 of the Texas Business and Commerce Code.  See 
Tex. Bus. & Com. Code Ann.
 § 15.50-15.52 (Vernon 2004).  Section 15.51(b) states that “[i]f the primary purpose of the Agreement to which the [noncompete] covenant is ancillary is to obligate the promisor to render 
personal services
 . . . the promisee has the burden of establishing that the covenant meets the criteria specified by [s]ection 15.50 of this code.”
 
 
Id
. § 15.51(b) (emphasis supplied).  This provision applies to the employment Agreement in this case because the primary purpose of the Agreement is Dickey’s employment—that is, engaging Dickey’s personal services of selling 31-W’s insulation products.  Thus, the noncompete covenant is enforceable if 31-W can prove that it meets section 15.50's criteria: the covenant must be “ancillary to or part of an 
otherwise enforceable agreement 
at the time the agreement is made.” 
 
Id.
 § 15.50(a) (emphasis supplied).

To determine whether the noncompete covenant meets this standard, we undertake a three-step process.  First, we must determine whether an agreement “otherwise” exists apart from the noncompete covenant.  That is, we set aside the Agreement’s noncompete covenants and determine whether any other promises remain to bind the parties under the Agreement.  Second, we must examine the remaining promises to ensure that the Agreement is enforceable apart from the noncompete covenant—that the promises are non-illusory promises that the parties are in fact bound to perform.  Third, if we have concluded that an “otherwise enforceable agreement” exists, we must determine whether the noncompete covenant is a part of or ancillary to that otherwise enforceable agreement.  We make this final determination by examining whether the Agreement’s remaining promises satisfy the following two factors:  (1) the employer’s promise must give rise to the employer’s interest in restraining the employee from competing; and (2) the noncompete covenant must be designed to enforce the employee’s return promise in the otherwise enforceable agreement.  
Id.
  “Unless both elements of the test are satisfied, the [noncompete] covenant cannot be ancillary to or a part of an otherwise enforceable agreement, and is therefore a naked restraint of trade and unenforceable.” 
 Light, 
883 S.W.2d at 647.

Turning to the three-part analysis and reviewing the pertinent parts of the Agreement as previously described, we first determine whether an agreement “otherwise” exists apart from the noncompete covenants.  After disregarding paragraphs 7b and 7c, which are noncompete covenants, and reviewing the remaining promises, we conclude that the other terms of the Agreement are sufficient to bind the parties and constitute an agreement even in the absence of the noncompete covenants. 

We turn now to the second step in the analysis and determine whether the remaining promises in the Agreement are nonillusory terms that bind the parties to perform, thus making the Agreement apart from the noncompete covenant an “otherwise enforceable” agreement.  It is undisputed that Dickey was an employee at will.  At-will employment agreements are not themselves “otherwise enforceable agreements,”
 because they are not binding on the employer or employee.  
Travel Masters, Inc. v. Star Tours, Inc
., 827 S.W.2d 830, 832-33 (Tex. 1991).  However,

at-will employment does not preclude the formation of other contracts between employer and employee.  At-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will.  Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment.  Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance.  When illusory promises are all that support a purported bilateral contract, there is no contract.  In short, . . .  “otherwise enforceable agreements” can emanate from at-will employment so long as the consideration for any promise is not illusory.

Light
, 883 S.W.2d at 644-45.

The Dallas Court of Appeals addresses a similar situation in 
Strickland v. Medtronic, Inc
., 97 S.W.3d 835 (Tex. App.—Dallas 2003, pet. dism’d w.o.j.).  That case involved an interlocutory appeal from an order granting Medtronic Inc. a temporary injunction enforcing a noncompete covenant against its former at-will employee, Strickland.  The court noted that 

in this case there are several nonillusory promises that were capable of serving as consideration for the agreement despite Strickland’s at-will status, namely:  (1) Medtronic’s promise to provide ninety days[’] notice of termination if Strickland was terminated without cause; . . . (3) Strickland’s promise not to use or disclose confidential information; [and] (4) Strickland’s promise to return documents and tangible items upon termination.  Medtronic argues that the following provision in the employee agreement’s “Introduction” was additional consideration by Medtronic.  “This agreement is intended to recognize that Medtronic provides the Employee with information concerning its business, products and customers and entrusts the Employee with business relationships and good will of great value to Medtronic.”

Id
. at 838-39.  The court held
, “even assuming by this [last] provision [that] Medtronic impliedly promised to provide confidential information to Strickland, we conclude [that] such a promise is illusory because it necessarily depends on a period of employment.  Medtronic
 
could avoid this obligation by simply firing
 
Strickland on the day [that] the employment Agreement was executed.”
  Id
. at 839.  The same analysis applied to the providing of training by Medtronic and was deemed by the court also to be illusory.  
Id.

Here, 31-W’s promise in the Agreement to provide Dickey access to its confidential information is illusory for the same reason set forth in 
Strickland
: 31-W could terminate Dickey’s employment immediately after signing the Agreement and thereby never be obligated to provide him with any confidential information at all.  On the other hand, certain promises in the Agreement are not illusory because they are “not dependant on a period of continued employment”:  (a) the two weeks’ notice of termination; (b) 31-W’s promise to compensate Dickey during that two-weeks notice period; and (c) Dickey’s promise to return and not use 31-W’s business information, including confidential information.  Therefore, because 31-W and Dickey are bound by these nonillusory promises, the Agreement is “otherwise enforceable” apart from the noncompete covenant. 

Finally under our analysis, we must determine whether the noncompete covenant is a part of or ancillary to this otherwise enforceable agreement.  To make this determination, we test the Agreement, apart from the noncompete covenant, to see if (1) 31-W’s remaining enforceable promises give rise to its interest in restraining Dickey from competing and (2) the covenant is designed to enforce Dickey’s consideration in the otherwise enforceable agreement, recalling that both tests must be met.  
See Light
, 883 S.W.2d at 647.

As to whether 31-W’s remaining promises to give Dickey two weeks’ notice of termination and to compensate him during that two-week period give rise to its interest in restraining Dickey from competing, we find, as in 
Strickland,
 that “such promises do not give rise to an interest worthy of protection by a covenant not to compete.”  
See Strickland,  
97
 
S.W.3d at 838
.
  As such, the noncompete agreement is not ancillary to or part of an otherwise enforceable agreement and is therefore unenforceable under section 15.50 of the Texas Business and Commerce Code.  Accordingly, we cannot say the trial court abused its discretion in denying the requested temporary injunction.  We overrule 31-W’s first point.

V.  LACK OF VERIFICATION

By its second point, 31-W asserts that the trial court erred if it denied the temporary injunction because 31-W’s motion for temporary injunction was unverified.  The error alleged in this issue has been mooted by the evidentiary hearing the trial court held on this motion.  
See Nguyen v. Interex, Inc
., 93 S.W.3d 288, 298 (Tex. App.—Houston [14
th
 Dist.] 2002, no pet.); 
Georgiades v. Ferrante,
 871 S.W.2d 878, 882 (Tex. App.—Houston [14
th
 Dist.] 1994, writ denied); 
Ohlhausen v. Thompson
, 704 S.W.2d 434, 437 (Tex. App.—Houston [14
th
 Dist.] 1986, no writ) (all holding that a verified petition for injunctive relief is not required to obtain a permanent injunction when a full evidentiary hearing on evidence has been held).  31-W’s second point is overruled.

VI.  CONCLUSION

Having disposed of 31-W’s points on appeal, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: July 29, 2004