COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-238-CV

 

 

PAULA O=BRIEN                                                                  APPELLANT

 

                                                   V.

 

RATTIKIN TITLE COMPANY                                                     APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction








In this accelerated appeal, Appellant Paula O=Brien
complains of an injunction issued by the trial court enforcing the terms of a
covenant not to compete contained in an employment agreement between O=Brien
and Appellee Rattikin Title Company (ARattikin@).  In three issues, O=Brien
contends that the trial court abused its discretion by granting the temporary
injunction because Rattikin=s
promises to O=Brien are illusory, Rattikin
does not have a legitimate business interest worthy of protection, and the
hardship on O=Brien outweighs Rattikin=s need
to protect any legitimate business interest. 
We affirm.

II.  Factual and Procedural Background

This is the case of the enjoined escrow
agent.  Paula O=Brien is
a seasoned real estate closer, or escrow agent, with over twenty years
experience.  She began work at Rattikin
in February 2000 as a vice-president in charge of one of Rattikin=s branch
offices.  O=Brien=s duties
included supervising the other employees at the branch,  coordinating the entire process of closing
real estate transactions, bringing in and maintaining business, and generating
profits.








In connection with her initial employment with
Rattikin, O=Brien executed an AEmployment
Agreement@ and a AConfidentiality
Agreement and Covenant Not to Compete,@ each of
which expressly incorporated the other. 
The term of her employment was to be for five years, beginning April 1,
2000 and continuing to March 31, 2005, and, if not terminated by the end of the
term, was to continue on a month-to-month basis thereafter.  Her salary was guaranteed for one year.  Paragraph 2(a) of the employment agreement
enumerated four ways in which the agreement and employment relationship could
be terminated, and paragraph 2(b), entitled ALayoff,@ also
allowed Rattikin to end the agreement if O=Brien
was laid off Asolely for economic reasons.@  Further, Rattikin agreed in paragraph 3 of
the confidentiality agreement, entitled AEmployer=s
Agreement,@ 
to provide O=Brien with any necessary
specialized training and proprietary and confidential information.  On the other hand, O=Brien
agreed in paragraph 4, entitled AEmployee=s
Agreement,@ and in paragraphs 5, 6, and 7
that during the term of the Agreement and for a two-year period following the
termination of the Agreement she would refrain from certain acts, including
working for a competitor in Tarrant County, recruiting Rattikin employees to
work for a competitor, diverting Rattikin=s
business elsewhere, and using or revealing Rattikin=s
proprietary or confidential information. 
An AAmendment to Contract,@ signed
February 29, 2000, paid O=Brien an additional $15,000 for
signing the agreements.








In mid-April 2005, O=Brien
informed Rattikin that she intended to leave the company at the end of the
month.  As it turned out, she went to
work for a competitor, North American Title, took her branch employees with
her, and solicited Rattikin=s
underwriting counsel to also leave. 
According to Rattikin, by May 2, 2005, she was performing the identical
duties at her new job with her old employees, was closing transactions with her
old open files numbering about one hundred that she had at Rattikin, and was
located on the same street as her old Rattikin branch office.

Rattikin sought relief through the courts and
obtained a temporary restraining order, followed by a temporary injunction that
prohibits O=Brien from soliciting Rattikin=s
employees from leaving their employment, from using Ratiken=s
confidential information, and from working as a real estate closer in Tarrant
County.  It is from this injunction that
O=Brien
appeals.

III.  Standard of ReviewCTemporary
Injunction








This is a road well-traveled.  As we recently stated in 31-W Insulation
Co., Inc. v. Dickey, 144 S.W.3d 153, 156 (Tex. AppCFort
Worth 2004, pet. withdrawn), the issue before the trial court in a temporary
injunction hearing is whether the applicant is entitled to preserve the status
quo of the subject matter of the suit until the case is tried on the
merits.  Davis v. Huey, 571 S.W.2d
859, 862 (Tex. 1978).  An applicant for a
temporary injunction must plead and prove (1) a cause of action against the
defendant, (2) a probable right to relief, and (3) a probable, imminent, and
irreparable injury in the interim.  Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  The decision to grant or to deny a request
for a temporary injunction lies with the sound discretion of the trial court
and will only be disturbed for an abuse of that discretion.  Id. 
Therefore, we must view the evidence in the light most favorable to the
trial court=s order, indulging every
reasonable inference in its favor, and determine whether the order was so
arbitrary that it exceeds the bounds of reasonable discretion.  IAC, Ltd. v. Bell Hellicopter Textron,
Inc., 160 S.W.3d 191, 196 (Tex. App.CFort
Worth 2005, no pet.).  A trial court does
not abuse its discretion as long as there is some evidence to support the trial
court=s
decision.  Id.[2]

IV.  Probable Right to ReliefCBreach
of Contract








In her first, second, and third issues, O=Brien
argues that Aonly illusory promises [are]
ancillary@ to the noncompete covenant,
that Rattikin did not establish that it had a legitimate business interest
worthy of protection, and that the hardship on her outweighs Rattikin=s
interest in protecting its legitimate business interests.  Each one of O=Brien=s issues
implicitly challenges the trial court=s
finding that Rattikin established a probable right to relief at trial.  Consequently, we will review the trial court=s
exercise of discretion in determining that Rattikin established a probability
of success at trial. 

A.  Noncompete Covenant Requirements








Rattikin asserted a breach of contract claim,
arguing, among other things, that AO=Brien=s new
employment by North American Title in the same area of Tarrant County in which
she worked for Rattikin Title constitutes a breach of the Agreement=s
non-compete provision.@ 
Subchapter E of chapter 15 of the Texas Business and Commerce Code sets
forth the standards for establishing an enforceable covenant not to
compete.  See Tex. Bus. & Com. Code Ann. '
15.50-15.52.  Section 15.51(b) provides
that A[i]f the
primary purpose of the agreement to which the [noncompete] covenant is
ancillary is to obligate the promisor to render personal services . . . the
promisee has the burden of establishing that the covenant meets the criteria
specified by Section 15.50 of this code.@  Id. '
15.51(b).  Thus, under the appropriate
standard of review, we will examine the record to determine if Rattikin
presented some evidence that the covenant not to compete meets section 15.50's
criteria:  the covenant (1) must be
ancillary to or part of an otherwise enforceable agreement at the time the
agreement is made and (2) must contain reasonable time, geographical area, and
scope of activity limitations that do not impose a greater restraint than is
necessary to protect the promissee=s
goodwill or other legitimate business interests.   Id. '
15.50(a); Dickey, 144 S.W.3d at 157. 


In Dickey, we cited Light and
discussed how to determine whether the noncompete covenant meets the
first requirement of section 15.50Cwhether
it is ancillary to or part of an otherwise enforceable agreement.  Dickey, 144 S.W.3d at 157.  We reasoned,

First, we must determine
whether an agreement Aotherwise@ exists apart from the
noncompete covenant.  That is, we set
aside the Agreement=s noncompete covenants
and determine whether any other promises remain to bind the parties under the
Agreement.  Second, we must examine the
remaining promises to ensure that the Agreement is enforceable apart from the
noncompete covenantCthat the promises are
non-illusory promises that the parties are in fact bound to perform.  Third, if we have concluded that an Aotherwise enforceable
agreement@ exists, we must
determine whether the noncompete covenant is a part of or ancillary to that
otherwise enforceable agreement.  We make
this final determination by examining whether the Agreement=s remaining promises
satisfy the following two factors:  (1)
the employer=s promise must give rise
to the employer=s interest in restraining
the employee from competing; and (2) the noncompete covenant must be designed
to enforce the employee=s return promise in the
otherwise enforceable agreement.  AUnless both elements of
the test are satisfied, the [noncompete] covenant cannot be ancillary to or a
part of an otherwise enforceable agreement, and is therefore a naked restraint
of trade and unenforceable.@

 

Dickey, 144 S.W.3d at 157 (citations ommitted).

 

 








B.  Analysis

1. 
Ilusory Promises

O=Brien
concedes that the first step under the Light analysis is metCthat is,
that an agreement exists apart from the non-compete clauses.  But she argues that promises concerning
confidential and proprietary information and specialized training were
ancillary, but illusory, while the payment of one year=s
salary, not dependent on a term of employment, was not illusory, but was not
ancillary because it was not the sort of promise giving rise to an interest
worthy of the protection of a non-compete agreement.  We will concern ourselves only with Rattikin=s
promise to provide confidential and proprietary information and specialized
training because it is dispositive to our review.[3]  








O=Brien
argues that the information and training promises were illusory because the
decision to provide them was a unilateral decision by Rattikin who could decide
that the information and training was not Anecessary@ and
because O=Brien could be terminated at any
time before she began work on April 1, 2000, in that a termination for Aeconomic
reasons@ is
purely arbitrary.  Rattikin responds that
the Agreement contains an explicit five-year term, that O=Brien=s testimony
reflect that she understood this, and that the Agreement unambiguously stated
that Rattikin would supply the provided information and training to O=Brien.  We agree with Rattikin=s
response.

Rattikin presented evidence outlining the
relevant terms of the contract.  William
Jackson Rattikin III testified about paragraph 3 of the confidentiality
agreement, which reads as follows:

Employer hereby agrees to
provide to Employee any specialized training necessary, in the opinion of
Employer, to allow Employee to conduct the duties of employment with
Employer.  Employer further agrees to
provide to Employee any of Employer=s proprietary and confidential information
necessary to allow Employee to conduct the duties of employment with Employer.

 

Rattikin III also testified about paragraphs 4 and 5, which provide
that as consideration for Rattikin=s
promises, O=Brien will not work for a
competitor in Tarrant County, recruit Rattikin employees to work for a
competitor, divert Rattikin=s
business elsewhere, or use or reveal Rattikin=s
proprietary or confidential information. 








From the plain language of the promises, the
trial court could have concluded that Rattikin was in fact bound to provide O=Brien
with confidential and proprietary information and specialized training.  The agreement merely gives Rattikin the
option of determining, in its opinion, what confidential and proprietary
information and training it should provide O=Brien
during the course of her employment. 
Indeed, Rattikin III testified that Rattikin provided O=Brien
with confidential and proprietary information and specialized training.  At the injunction hearing, O=Brien
admitted the validity of the agreement and understood that it consisted of, at
a minimum, a five year term.  Thus, the
employment relationship was not at-will, and the promises were not illusory
because Rattikin committed to employing O=Brien
for a period of five years and on a monthly basis thereafter.  See Dickey, 144 S.W.3d at 158-59.  O=Brien=s
arguments that the promises are illusory, in part because she was an at-will
employee, are unpersuasive. 
Consequently, the evidence viewed in the light most favorable to the
trial court=s order demonstrates that Rattikin=s
promises to provide O=Brien confidential and
proprietary information and specialized training are not illusory and are
capable of serving as consideration for the agreement, thus binding the parties
apart from the noncompete covenant.  O=Brien
concedes that the promises are ancillary. 
Accordingly, we hold that Rattikin established a probable right to
relief by presenting some evidence of an Aotherwise
enforceable agreement.@ 
We overrule O=Brien=s first
issue.

 

 








2. 
Legitimate Business Interest








O=Brien
argues in her second issue that Rattikin failed to establish that it had any
legitimate business interest requiring protection by a noncompete covenantCa
requirement under the second prong of section 15.50(a).  See Tex.
Bus. & Com. Code Ann. '
15.50(a).  Examples of legitimate,
protectable business interests include business goodwill, trade secrets, and
other confidential and proprietary information. 
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 682 (Tex. 1990), cert.
denied, 498 U.S. 1048 (1994).  And as
O=Brien
points out, section 15.50(a) expressly identifies goodwill as a legitimate
business interest.  At the temporary
injunction hearing, Rattikin presented evidence that it has Aexpended
substantial amounts of time and funds in establishing a reputation in the State
of Texas, and particularly in all counties@ where
Rattikin operates.  Rattikin further
presented evidence that it provided to O=Brien
confidential and proprietary information in the form of a Acompany
closing manual,@ a cumulative know-how, internal
document developed over the last twenty years; self-generated marketing
documents containing information about realtors, other title companies, and
customer solicitations; and financial data, including budget information.  Accordingly, viewing the evidence in the
light most favorable to the trial court=s order,
we hold that Rattikin established a probable right to relief by presenting some
evidence of a legitimate business interest worthy of protection by its
noncompete covenant.  We overrule O=Brien=s second
issue.

3. 
Hardship

Without citing any authority, O=Brien
argues that the hardship placed upon O=Brien by
the noncompete covenant outweighs Rattikin=s need
to protect any legitimate business interest it might have in the confidential
information. O=Brien reasons that because most
files close in thirty to sixty days, and the injunction order preventing O=Brien
from working as a closer had been in effect for more than sixty days when O=Brien
filed her appellate brief, the injunction=s time
limitation is unreasonably lengthy.

An injunction is an equitable remedy, and the
trial court must weigh the respective conveniences and hardships of the parties
and balance the equities.  Computek
Computer & Office Supplies, Inc., v. Walton, 156 S.W.3d 217, 220 (Tex.
App.CDallas
2005, no pet.).  A trial court may
consider whether the applicant would suffer significant or slight injury if the
injunction were erroneously denied and whether injury to the opposing party
would be significant or slight if the injunction were erroneously granted.  T.F.W. Mgmt., Inc., v. Westwood Shores
Prop. Owners Assoc., 162 S.W.3d 564, 575 (Tex. App.CHouston
[14th Dist.] 2004, no pet.).








The record shows that the trial court weighed the
equities involved when considering whether to grant or deny the temporary
injunction.  At the conclusion of the
temporary injunction hearing, the trial court recognized that the evidence
demonstrated that O=Brien received confidential
information during her employment with Rattikin, that the covenant=s
geographical limitation covers only Tarrant County, and that the covenant=s
purpose was meant in part to retain O=Brien as
an employee of Rattikin and to prevent Rattikin=s
competitors from getting an unfair advantage by hiring an employee similar to O=BrienCan
individual with years of training and an extensive customer base.  The trial court also recognized that certain
information O=Brien possessed was not
confidential and that O=Brien had customers prior to
joining Rattikin that intended to continue doing business with her wherever she
worked.  The trial court=s focus,
however, seemed to be on the covenant=s two
year time limitation, which is at the heart of O=Brien=s
argument.  O=Brien
testified that she thought her contract with Rattikin was limited to only five
years=
employment.  She testified that she
honored the agreement for five years and that she does not deny its validity
for that period of time.  However,
paragraph 6 of the confidential agreement and noncompete covenant clearly reads
as follows:








Duration. Employee hereby covenants and
agrees that this Agreement shall be in effect during Employment and for two (2)
year(s) following Involuntary Termination of employment from Employer, or
Voluntary Resignation by Employee, and so long as there has not been a material
breach of the Employment Agreement by Employer.

In considering this portion of the contract and O=Brien=s  understanding thereof, the trial court
stated,

I=m going to tell you the
problem that we have here is that she admitted. 
She didn=t have a lawyer look at
this, and now she=s coming back saying . .
. King=s X, I=m [sic] really didn=t mean it.

 

        .
. . .

What do I do?  She sat her[e] and admitted under oath that
it was a valid agreement, and you=re coming in, and you lawyers are saying, well,
it=s really not, but she
knows it=s a valid contract and it
was . . . valid.

 

. . . .

I=m not
going to reform [the] two years.  I=m going
to tell you that because there=s no
case law that tells me that two years is extraneous.  I haven=t seen
any.  I haven=t been
provided anything.








Our task in this appeal is to determine whether
the trial court abused its discretion in finding that O=Brien
proved a probable right to relief at trial, which it expressly found at the
conclusion of the hearing.  See
Butnaru, 84 S.W.3d at 204.  Our job
is not to determine whether the covenant is enforceable.  See Cobb, 109 S.W.3d at 882-83.  Accordingly, we cannot say that the trial
court abused its discretion in balancing the equities involved, concluding that
the time limitation was not longer than necessary to protect Rattikin=s
legitimate business interests, and, thus, determining that Rattikin proved a
probable right to relief at trial.  We
overrule O=Brien=s third
issue to the extent she contends that the hardship arguably suffered by her
outweighs Rattkin=s desire to protect its business
interests.

V.  Irreparable Injury

In part of O=Brien=s third issue,
she briefly argues that Rattikin failed to show that it would suffer
irreparable injury and harm before trial absent a temporary injunction.  AAn
injury is irreparable if the injured party cannot be adequately compensated in
damages or if the damages cannot be measured by any certain pecuniary standard.@  Butnaru, 84 S.W.3d at 204.  Here, Rattikin presented evidence that O=Brien
went to work for a competitor (on the same street) immediately after leaving
Rattikin, that both of the Rattikin employees who worked with O=Brien in
her Tarrant County office left along with her, and that Rattikin has to compete
now not only with O=Brien, but against itself
because, according to Rattikin III, 

[w]e helped train Mrs. O=Brien and her staff.  We marketed her as being a professional, also
as being one of the best in the business in that area, and now that whole staff
is over at North American, and I=m trying to compete with that, who I=ve already trained and
set up in business, so I=m competing against
myself here.

 








Rattikin III further testified that he could not put a dollar figure
on the harm Rattikin has allegedly sustained.  Accordingly, viewing the evidence in the light
most favorable to the trial court=s order,
we hold that Rattikin presented some evidence of a probable, imminent, and
irreparable injury in the absence of a temporary injunction.  The trial court did not abuse its discretion
by granting the temporary injunction.  We
overrule O=Brien=s third
issue.

VI.  Conclusion

Having overruled all three of O=Brien=s
issues, we affirm the trial court=s
judgment.

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

 

DELIVERED: February 23,
2006











[1]See Tex. R. App. P. 47.4.





[2]Thus, the trial court at
a temporary injunction hearing only considers whether the applicant showed a
probable right to relief and irreparable injury, not the underlying merits of
the controversy, and an appeal from an order granting or denying a temporary
injunction based on a covenant not to compete does not present for appellate
review the ultimate question of whether the covenant is enforceable under
section 15.50 of the Texas Business and Commerce Code.  See Tex.
Bus. & Com. Code Ann. ' 15.50 (Vernon 2002); Davis, 571 S.W.2d at
861-62; Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 882-83 (Tex.
App.CDallas 2003, no pet.).





[3]Initially, we note that O=Brien=s argument regarding
Rattikin=s promise to provide
confidential information is logically unsound because a noncompete covenant can
only be ancillary to or part of Aan otherwise enforceable agreement.@  An illusory promise (standing alone) prevents
the formation of Aan otherwise enforceable
agreement,@ thus precluding the
noncompete covenant from being ancillary thereto.  Nonetheless, we will examine Rattikin=s promise in order to
determine if it is illusory.