

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00064-CV

JONATHAN AFLATOUNI, A/K/A                          APPELLANT
JOHN AFLATOUNI

V.

MARK ANTHONY MONTOYA AND                           APPELLEES
ENID MONTOYA

-----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2012-71252-431

----------

## MEMORANDUM OPINION[1]

----------

The dispute in this case arose out of attempts by Appellees Mark Anthony Montoya and Enid Montoya to foreclose on property they once owned. When they sold the property, the purchaser executed a note and deed of trust in their favor. The purchaser subsequently conveyed the property to Appellant Jonathan

---

[1]*See* Tex. R. App. P. 47.4.

Aflatouni a/k/a John Aflatouni. When the Montoyas attempted to foreclose, Aflatouni asked the trial court to enjoin the foreclosure. The trial court denied the request for injunctive relief, and Aflatouni now appeals.[2] Because we hold that the trial court did not abuse its discretion by denying the temporary injunction, we affirm the trial court's order.

## 1. Background

*1.1 The Montoyas sell six lots to Ryan, and she loses one to foreclosure*

The Montoyas owned lots 1, 2, 3, 4, 11, and 12 in a subdivision of Double Oak, Texas. In 2004, the Montoyas sold each of these lots to Jane Ryan. To finance the purchase, Ryan executed two promissory notes.

The first promissory note was payable to WMC Mortgage Corporation in the amount of $439,587.00. This note was secured by a deed of trust in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for WMC.

The second promissory note was payable to the Montoyas in the amount of $210,313.00 and was subordinate to the WMC note. This note called for monthly payments of $1,470.54, with the first payment due on September 1, 2009. Like the WMC note, the Montoya note was secured by a deed of trust. The Montoya note provided that Ryan's failure to pay any installment due on the WMC note "*shall* mature this indebtedness and make it

---

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2015) (allowing interlocutory appeal from the denial of a temporary injunction).

2

subject to foreclosure under the terms of the Deed of Trust . . . at the option of" the Montoyas. [Emphasis added.]

Ryan defaulted on the WMC note, and on July 5, 2005, WMC foreclosed on lot 11 only. MERS bought the property at the foreclosure sale for $461,227.12.

### 1.2 Ryan files for bankruptcy protection

In August 2005, Ryan filed a chapter 7 bankruptcy petition.[3] She did not list the remaining five lots she owned as assets because she mistakenly thought that all six lots had been foreclosed upon. In November 2005, Ryan received a discharge, and in March 2006, her bankruptcy was closed.[4]

### 1.3 Ryan conveys lots to Aflatouni, Ryan's bankruptcy is reopened, and Aflatouni files for bankruptcy

At some point, Ryan discovered that the five lots had not been foreclosed upon, and on December 18, 2006, Ryan sold them to Aflatouni. In March 2010— over three years after Ryan had sold the lots and four years after WMC had foreclosed on lot 11—the Montoyas filed to reopen Ryan's bankruptcy[5] because the five lots had not been administered in the bankruptcy. The case was

---

[3]11 U.S.C.A. §§ 701–727 (West 2004 & Supp. 2014).

[4]*Id.* § 350(a) (West 2004) (stating that the bankruptcy court shall close the bankruptcy case after the estate is fully administered and the court has discharged the trustee).

[5]*Id.* § 350(b) (providing that a bankruptcy case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause").

reopened, and in November 2010, the trustee formally abandoned the five lots. On December 6, 2010, Aflatouni filed for chapter 13 bankruptcy.

### 1.4 The Montoyas take steps to foreclose on the remaining five lots while Aflatouni's bankruptcy is pending

The day after Aflatouni filed for bankruptcy protection, the Montoyas' attorney sent notice of foreclosure of the five lots to Ryan. The foreclosure sale was held on January 4, 2011. The Montoyas bought the five lots at the sale.

On January 12, 2011, Aflatouni's bankruptcy was dismissed for failure to file all the required documents.[6] He refiled the bankruptcy the next day. The bankruptcy court determined that the January 4 foreclosure sale of the five lots was void because it was conducted before Aflatouni's bankruptcy had been dismissed and thus while Aflatouni was under bankruptcy protection. On May 16, 2011, Aflatouni's re-filed bankruptcy case was dismissed.

### 1.5 Aflatouni sues the Montoyas, and the Montoyas again take steps toward foreclosure

Based on the foreclosure conducted before the January 12 dismissal of Aflatouni's bankruptcy case, Aflatouni sued the Montoyas and their attorney for wrongful foreclosure, fraud, violation of the bankruptcy stay, failure to comply with notice requirements for a foreclosure, and violations of the Fair Debt

---

[6]See 11 U.S.C.A. § 521 (West Supp. 2014) (requiring a debtor who has filed for bankruptcy to file certain documents with the court and providing that the case may be dismissed if the debtor fails to do so).

4

Collection Practices Act. The Montoyas and their attorney filed a motion for summary judgment, which the trial court granted in March 2012.

In October 2012, the Montoyas' attorney mailed to Ryan and Aflatouni a notice of a foreclosure sale set for December 4, 2012. Aflatouni then filed this suit. He asked for a temporary restraining order regarding the foreclosure and a temporary injunction, asserted a claim for slander of title and an action to quiet title, and requested declaratory relief. The trial court granted the TRO. After a hearing, the court signed an order denying the injunction and dissolving the TRO. Aflatouni then brought this appeal.

After this appeal was filed, Aflatouni filed a suggestion of bankruptcy stating that he had (once again) filed for bankruptcy. Accordingly, this court suspended the appeal. After the bankruptcy court ordered a partial lift of the automatic stay to allow this appeal to proceed, Aflatouni moved to reinstate this appeal. We granted the motion and ordered the case reinstated.

## 2. Standard of Review

"The decision to grant or deny a temporary writ of injunction lies in the sound discretion of the trial court," and thus we review the trial court's decision for an abuse of that discretion.[7] "The issue before the trial court in a temporary injunction hearing is whether the applicant is entitled to preserve the status quo of the subject matter of the suit until the case is tried on the merits," and "[f]or this

---

[7] *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

5

court to reverse the trial court, it must be shown that the trial court misapplied the law to the facts or that the evidence does not reasonably support the trial court's ruling."[8]  We review the evidence and its valid inferences "in the light most favorable to the ruling, and we may not substitute our judgment for the trial court's.  Only arbitrary action by the trial court exceeding the bounds of reasonable discretion will warrant a reversal."[9]

### 3.  Discussion

*3.1  Requirements for the grant of a temporary injunction*

"[A] temporary injunction is an extraordinary remedy and does not issue as a matter of right."[10]  An applicant is entitled to a temporary injunction after pleading and proving:  "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim."[11]  "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard."[12]

---

[8]*31-W Insulation Co., Inc. v. Dickey*, 144 S.W.3d 153, 156 (Tex. App.—Fort Worth 2004, pet. withdrawn).

[9]*Id.*

[10]*Walling*, 863 S.W.2d at 57.

[11]*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

[12]*Id.*

*3.2 Whether the temporary injunction should have been granted on the ground of res judicata*

Aflatouni's first two issues argue that he met the requirement of pleading and proving a probable right to recover. His first issue is that the Montoya's lien is unenforceable due to res judicata. He argues that Ryan's debt to the Montoyas was automatically accelerated when WMC foreclosed on lot 11, and thus they had a right to foreclose at that point in time; that they did not assert any claim against him based on the debt in his prior suit against them; and that because their right to foreclosure was a compulsory counterclaim under civil procedure rule 97(a),[13] res judicata applies.[14] He argues that because he "cannot sue the Montoyas regarding their actions as the lender that occurred before" the final judgment in the prior case, and because res judicata is not applied to only one side of a lawsuit, the Montoyas' claims are also barred.

In *Kaspar v. Keller*, the Waco Court of Appeals court held that the doctrine of res judicata does not apply to a lender's choice of remedies under a deed of trust.[15] Recently, in *Steptoe*,[16] the Houston First Court of Appeals reaffirmed *Kaspar*'s basic holding. *Steptoe* involved a home equity loan, but its reasoning

---

[13]*See* Tex. R. Civ. P. 97(a) (discussing compulsory counterclaims).

[14]*See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628–29 (Tex. 1992) (discussing elements of res judicata doctrine).

[15]466 S.W.2d 326, 328–29 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.).

[16]*Steptoe v. JPMorgan Chase Bank, N.A.*, No. 01-14-00813-CV, 2015 WL 1263128 (Tex. App.—Houston [1st Dist.] Mar. 19, 2015, no. pet. h.).

applies equally to this case. As *Steptoe* stated, "the underlying purpose of the *Kaspar* rule is to 'prevent a borrower from depriving its lender of a choice of remedies'" and "to curtail a debtor's ability to control what remedy a creditor may pursue."[17] The *Steptoe* court further observed that "a claim for judicial foreclosure[18] *could* be filed as a counterclaim in a suit initiated by the borrower [that] . . . challenges the propriety of the loan agreement," but

> [r]equiring a lender to assert a counterclaim to preserve its foreclosure rights has the potential to encourage the filing of meritless suits by borrowers for the purpose of interfering with a creditor's choice of remedy. In keeping with the purpose of the *Kaspar* rule, a mortgagor, who has the bargained-for right of non-judicial foreclosure should not be limited only to those remedies that may be brought as a counter-claim.[19]

Aflatouni recognizes the *Kaspar* rule but attempts to distinguish it on the ground that it stated that a "mortgagor" should not be permitted to destroy or impair a lender's contractual right to foreclosure under a power of sale by filing a suit.[20] He argues that because he was never a borrower of the Montoyas, *Kaspar* does not apply.

The argument is specious. The property was burdened by the deed of trust at the time that Ryan conveyed it, and any rights Aflatouni acquired in the

---

[17] *Id.* at *3, *4 (citation omitted).

[18] In this case the Montoyas are attempting to exercise their right of nonjudicial foreclosure.

[19] *Id.* at *3, *4 (emphasis added).

[20] *Kaspar*, 466 S.W.2d at 329.

lots by that conveyance were subject to rights the Montoyas held under the deed of trust.[21] If Ryan could not have destroyed the Montoyas' right to elect their remedy by filing suit, neither could Aflatouni.

Aflatouni further attempts to distinguish *Kaspar* by asserting that in this case, the foreclosure sale had already been conducted at the time of his previous suit. He asserts that in *Kaspar*, the foreclosure sale had not been held at the time of the first suit, and therefore no deficiency existed at the time of the first suit and a claim for deficiency could not have been raised at that time, and thus res judicata did not prevent the lender from asserting it in a second suit. This argument goes nowhere. Without agreeing with this limitation on the applicability of *Kaspar*, we point out that the Montoyas' previous attempt at foreclosure was declared void by the bankruptcy court, and thus no foreclosure has occurred.[22]

Aflatouni raises no special circumstances in this case that would prevent the *Kaspar* rule from applying. We agree with the underlying purpose of *Kaspar* and the reasoning of *Steptoe* that a borrower—or in this case, a person who takes property subject to the rights of the borrower's lender—cannot dictate a lender's choice of remedy. We overrule Aflatouni's first issue.

---

[21]*See Lavigne v. Holder*, 186 S.W.3d 625, 628 (Tex. App.—Fort Worth 2006, no pet.).

[22]*See Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex. 1972) (stating that a void act is "one entirely null within itself, not binding on either party" (citation omitted)).

9

*3.3  Whether the temporary injunction should have been granted on limitations*

Aflatouni's second issue is that the trial court abused its discretion because he has a probable right to recover on the ground of limitations.  He argues that the statute of limitation bars the Montoyas from enforcing their rights under the deed of trust because their rights arose either when Ryan defaulted on the WMC note or when Ryan sold the property to Aflatouni.

Generally, a foreclosure under a deed of trust must be made no later than four years after the day that the right of sale accrues.[23]  In this case, however, when Ryan filed for bankruptcy, her five lots became property of the bankruptcy estate.[24]  Under bankruptcy law, property listed on a schedule of assets that is not administered during the bankruptcy is abandoned to the debtor at the close of bankruptcy, but property that is not abandoned or administered remains property of the estate.[25]  Ryan did not list the five lots on her schedule of assets in bankruptcy, and as such, the property was neither administered during the initial

---

[23]Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b) (West 2002); *see also id.* § 16.035(e) ("If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.").

[24]*See* 11 U.S.C.A. § 541(a) (West 2004) (provided that upon filing a bankruptcy case, an estate is created that includes, with certain exceptions, all of the debtor's legal or equitable interests in property that the debtor had as of the commencement of the case).

[25]11 U.S.C.A. § 554(c), (d) (West 2004 & Supp. 2014); *In re Associated Vintage Grp., Inc.*, 283 B.R. 549, 566 n.14 (B.A.P. 9th Cir. 2002) ("Unscheduled property remains 'property of the estate' after the case is closed (i.e. forever).").

bankruptcy proceedings nor abandoned when the bankruptcy was first closed in 2006. It remained property of the bankruptcy estate until the trustee abandoned it on November 16, 2010.

While the property was part of the bankruptcy estate, the automatic stay applied.[26] This stay continued even after the case was closed in 2006 because as long as property remains property of the estate, the automatic stay continues to apply to it.[27] And while the automatic stay was in place, the Montoyas could not have foreclosed.[28]

Because of the effect of the automatic stay, even if Aflatouni is correct about when the debt matured or was accelerated, the statute of limitation does not bar the Montoyas from enforcing their rights under the deed of trust. Under Aflatouni's argument, the Montoyas' claim accrued on either July 5, 2005 (the date of the foreclosure on lot 11) or December 18, 2006 (when Ryan sold the remaining five lots). Limitations were tolled from the time Ryan filed her

---

[26]*See* 11 U.S.C.A. § 362(a) (West 2004 & Supp. 2014) (providing that the filing of a bankruptcy petition operates automatically as a stay of any act to obtain possession of property of the estate or to enforce any lien against property of the estate).

[27]*See id.* § 362(c)(1) (West Supp. 2014); *In re Poesnecker*, No. 5-07-bk-50507-JJT, 2014 WL 5503002, at *3 (Bankr. M.D. Pa. Oct. 30, 2014) ("The automatic stay attaches to property of the estate until such time that it is no longer property of the estate."); *In re Muhlig*, 494 B.R. 755, 762–63 (Bankr. S.D. Fla. 2013) (recognizing in a chapter 7 case that the automatic stay of actions against property of the estate continues as to the property that remains property of the estate after the bankruptcy is closed).

[28]*See* 11 U.S.C.A. § 362(a).

11

bankruptcy in August 2005 until the property was abandoned on November 16, 2010. Even if the stay did not apply (and therefore limitations were not tolled) during the periods in which Aflatouni was under bankruptcy protection,[29] the Montoyas instigated foreclosure proceedings within four years of the abandonment.[30] Thus, the Montoyas sought foreclosure within the limitation period.

Aflatouni makes no other argument about why he has a probable right of recovery based on the applicable statute of limitation. We overrule his second issue.

*3.4 Whether Aflatouni met the remaining requirements for a temporary injunction*

Aflatouni argues in his third issue that he meets the two remaining requirements for obtaining a temporary injunction. We have already held that Aflatouni failed to show a probable right of recovery. Accordingly, whether he met the other two requirements is irrelevant, and we therefore overrule his third issue.

---

[29]*See Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988) ("An action taken in violation of the automatic stay is void, not merely voidable."); *see also York v. State*, 373 S.W.3d 32, 40 (Tex. 2012) (reaffirming the *Continental Casing* rule). The question of whether Ryan's conveyance of the lots to Aflatouni was a violation of the automatic stay is not before us.

[30]*Peterson v. Tex. Commerce Bank-Austin, Nat'l Ass'n*, 844 S.W.2d 291, 294 (Tex. App.—Austin 1992, no writ) ("[W]hen a claimant is prohibited from bringing suit by the Bankruptcy Code's automatic-stay provision, the statute of limitations is tolled until the stay is lifted.").

## 4. Conclusion

Having overruled Aflatouni's two issues, which are dispositive, we affirm the trial court's denial of the temporary injunction, and we remand this case to the trial court for further proceedings.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

WALKER, J., and GABRIEL, J., concur without opinion.

DELIVERED:  April 30, 2015

13